[Cite as *State v. Lauer*, 2016-Ohio-505.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                          :

      Plaintiff-Appellee,          :

                                          No.  15AP-405

v.                                     :          (C.P.C. No. 13CR-4950)

Mary Lauer,                            :          (REGULAR CALENDAR)

      Defendant-Appellant.         :

 

D E C I S I O N

Rendered on February 11, 2016

 

*Yeura R. Venters*, Franklin County Public Defender, and *George M. Schumann*, for appellant.

*Michael DeWine*, Attorney General, *Kristin S. Pe*, and *Nathan T. Smith*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1}  Defendant-appellant, Mary Lauer, appeals from a decision of the Franklin County Court of Common Pleas filed on March 12, 2015 in which the trial court denied her post-sentencing motion to withdraw her guilty plea.  Specifically, she challenges the trial court's exercise of discretion in denying her counsel's request for a continuance to prepare for the hearing on her motion.  For the following reasons, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  On September 17, 2013, Mary Lauer, DDS was indicted for one count of theft and one count of Medicaid fraud.  Following negotiations, a number of continuances, and a change of counsel, on August 28, 2014, Lauer pled guilty to theft as a second degree felony, and the Medicaid fraud count was dismissed.

{¶ 3} On November 10, 2014, the trial court held a sentencing hearing at which it also took evidence on restitution. At the start of the sentencing hearing, Lauer's appointed counsel indicated for the first time that Lauer was dissatisfied with his services and explained that she had informed him the day before the hearing that he was no longer her attorney. The trial court, however, indicated that it had not permitted counsel to withdraw and pressed forward with the hearing. A single witness testified in the hearing, an investigator with the Ohio Attorney General's Healthcare Fraud Section. He testified that his attention was drawn to Lauer by the Ohio State Dental Board when it had noted that Lauer appeared to be billing Medicaid for services during a period of time in which her license to practice dentistry was temporarily suspended and that her billing totals for Medicaid were high as compared to those of her peers. The investigator for the state discovered that Lauer billed for approximately $12,000 in services while her license was suspended, and she was billing for several root canals per day for very elderly patients. Forty-four of Lauer's 583 patients apparently entered nursing care edentulous (without teeth) and yet, Lauer billed $217,000 for services such as fillings and root canals for those patients. According to the investigator, such services can only be performed on persons having teeth. Lauer billed $11,000 for 45 root canals on a single patient who had no teeth.[1] In an interview with the investigators, Lauer admitted that she probably had incorrectly billed for services like root canals that she had not in fact performed, but she maintained that she had provided dental services to her patients.

{¶ 4} The investigator calculated the total amount billed for services Lauer did not perform to be more than one million dollars. The investigator also testified that calculation was conservative because he did not include in that amount billed amounts for services for which there were no corroborating dental records. According to the investigator, only services that could not have been feasibly performed or services Lauer admitted to incorrectly billing were included. For example, the investigator did not

---

[1] We take judicial notice of the fact that the normal adult human has 32 teeth at maturity (including wisdom teeth).

include x-ray services in the total of unperformed but billed services, even though there was no evidence (films or prints) that they had been performed.

{¶ 5} Lauer also testified at the hearing. She explained that most of her patients needed dentures and denture-related services and adjustments. Some denture services were not covered by Medicaid and others needed preauthorization that she testified took too long and in some cases were not approved. She stated that the lab bills associated with casting her patients' dentures were expensive and she was meeting those costs herself. So when she did not receive a preauthorization or when she could not get reimbursement for lab costs through Medicaid she would instead bill it as a root canal or as a similar, less-closely examined service. For instance, she testified that five root canals are comparable in price to one set of dentures, so she would bill it that way. Also, a limited oral exam was comparable to a dentures adjustment in price so she would bill that instead of the uncovered adjustment. The investigator also testified regarding Lauer's explanation and admitted that it could explain the billing anomalies he uncovered.

{¶ 6} The trial court credited Lauer's explanation to an extent and granted her a setoff of the restitution amount based on services rendered. Thus, instead of more than one million dollars in restitution, the trial court ordered Lauer to pay $700,000 in restitution. Ultimately the trial court entered judgment on November 17, 2014, imposing 5 years of community control and 180 days of jail with 150 days suspended on the condition that Lauer make a payment of $10,000 of restitution during the early period of community control.

{¶ 7} On November 24, 2014, Lauer's counsel was permitted to withdraw because Lauer had discharged him. Thus, at a hearing on December 18, 2014, to determine if Lauer had yet paid at least $10,000 in restitution, Lauer was not represented by counsel. At the hearing Lauer attempted to present evidence of other dental work she had done and alleged that her attorney had told her that if she could present evidence to the court showing that she had actually performed services, that the offense to which she had pled guilty would no longer have been a second-degree felony, because the amount stolen would have been less. She also alleged she had pled guilty under duress. The trial court explained that she had already pled guilty and been afforded the advice and assistance of

counsel and that if she had issues to raise, she should obtain a lawyer and file a motion or appeal.

{¶ 8} On December 27, 2014, Lauer filed a letter with accompanying records seeking to withdraw her guilty plea and other relief. On January 6, 2015, the trial court set a hearing on the matter for January 20, 2015, and it stated that if Lauer had not paid $10,000 in restitution by the date of hearing it would order her to serve jail time. In addition, the trial court ordered Lauer's former counsel to appear as a witness to give testimony regarding Lauer's motion to withdraw her guilty plea.

{¶ 9} On January 20, 2015, the parties appeared for the scheduled hearing and Lauer was represented by a public defender. Lauer's newly appointed counsel moved for a continuance to permit her to review Lauer's records and obtain a copy of the change of plea transcript before conducting the hearing. The trial court heard the arguments of parties on the motion for continuance and denied the motion, reasoning that the issue was narrow, the court conducts plea hearings in a uniform manner with the same colloquy, and there was a witness already present for the scheduled hearing. The trial court further determined the motion to be a delaying tactic on Lauer's part.

{¶ 10} Lauer's former counsel testified to his opinion that Lauer entered her plea voluntarily and intelligently and that he did not believe the case was triable. He explained Lauer's view of the case as being essentially a contract dispute where she was entitled to money and had simply billed the services under the wrong codes; Lauer did not perceive her actions as theft. Lauer's former counsel testified that even if Lauer's perceptions were true, her explanation was not a legally effective defense to the crimes for which she had been indicted. He also explained that two possible deals were proposed to Lauer: first, that she could plead guilty to a second-degree felony theft and then argue the amount of restitution or, second, that she could plead guilty to a third-degree felony Medicaid fraud and stipulate or remain silent on the matter of restitution.

{¶ 11} Lauer also testified. She stated that she attempted to show her previous attorney copies of records, including photographs, showing how and why it was possible and sometimes necessary to do a root canal on a patient appearing to be edentulous but who in fact still has nubs or roots of teeth. However, she said her attorney refused to

examine the records of those instances. She explained that she pled guilty to the second-degree felony theft thinking that she could then argue about the amount of restitution and, if she satisfied the court that the amount was little or nothing, the conviction would no longer amount to a second-degree felony. In addition she testified that she did not read or see the entire plea form, that it was just briefly placed on an electronic display and that she signed electronically. Finally, she explained that she suffers from post traumatic stress disorder, has also experienced a number of concussions as a result of passing out and falling, and was on medications at the time of the plea hearing that may have affected her judgment. However, she admitted that she brought none of these concerns to anyone's attention at the time of her plea hearing.

{¶ 12} The trial court expressed its opinion from the bench following the hearing. It found Lauer not to be credible and decided to credit the testimony of her former counsel. However, the trial court expressed sympathy for Lauer, recognizing that she had performed services for her patients. The trial court offered to Lauer the opportunity to provide evidence of her health problems to support a further suspension of the 30 days of jail that had been suspended pending an early $10,000 restitution payment.

{¶ 13} On March 12, 2015, the trial court held a final hearing at which it decided not to order Lauer to spend any actual time in jail and thereby suspended the entire 180-day jail term. The same day the trial court filed an entry denying Lauer's request to withdraw her plea.

{¶ 14} Lauer now appeals.

## II. ASSIGNMENT OF ERROR

{¶ 15} Lauer presents a single assignment of error for review:

> ASSIGNMENT OF ERROR: The trial court erred by denying new substitute defense counsel's request for a continuance of the hearing of the defendant's pro se motion to withdraw her guilty plea.

## III. DISCUSSION

{¶ 16} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St. 2d 65, 67 (1981). " There are no mechanical tests for deciding when a denial of a continuance is so arbitrary

No. 15AP-405

as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

> In evaluating a motion for a continuance, a court should note, *inter alia*: [1] the length of the delay requested; [2] whether other continuances have been requested and received; [3] the inconvenience to litigants, witnesses, opposing counsel and the court; [4] whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; [5] whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and [6] other relevant factors, depending on the unique facts of each case.

*Unger* at 67-68.

{¶ 17} In this case, Lauer submitted a letter pro se to the court "asking for a *** Motion to withdraw of guilty plea" in which she alleged various problems with her counsel's performance and the way her case was handled by the trial court. (Dec. 27, 2014 Motion, 1). This followed her oral complaints about counsel made during the hearing on December 18, 2014. The trial court set a hearing and ordered Lauer's former counsel to appear and give testimony. On the day of the hearing at which her pro se letter/motion was to be handled, the trial court appointed a public defender (who had met once with Lauer before the hearing) to represent her. That attorney made a motion on Lauer's behalf for a continuance so that she could become familiar with the case in order to argue the underlying motion. Specifically, counsel argued:

> I would like to formally request a continuation on the hearing, which is based on Ms. Lauer's motion that she filed before I began my representation of her, Your Honor. The reason I'm asking for that continuance, Your Honor, is, I met with Ms. Lauer for the first time last Tuesday for an hour. She came to my office.
>
> She came with this much information out of her own file. I have not had time to consult with the State to formally request discovery or to conduct my own investigation, Your Honor. At this time, proceeding with this hearing would be in violation of Ms. Lauer's Sixth Amendment right as interpreted by the case of State versus -- sorry, Gideon versus Wainwright.

No. 15AP-405

> We would just ask for a brief continuance just to give me time to request the transcript of the sentencing, of the restitution hearing and of the plea hearing, Your Honor.

(Emphasis deleted.) (Jan. 20, 2015 Tr. 5-6.)

{¶ 18} The trial court then gave the prosecution an opportunity to respond. The prosecutor ultimately deferred to the court but added some remarks suggesting that the continuance motion should be denied.

> Your Honor, we believe this is a post-sentence motion to withdraw that. You know, the standard is manifest injustice. Certainly, that doesn't involve looking at the hundreds or thousands of pages that Ms. Lauer has turned over. I think that the issue is more narrow than the restitution and all the paperwork that Ms. Lauer has related to that.
>
> I believe the Court's made its decision on the restitution. I believe the issues are sufficiently narrow that we could move forward today on the motion to withdraw, but we defer to the Court.

(Jan. 20, 2015 Tr. 6-7.)

{¶ 19} Having heard from both sides, the trial court ruled:

> [Lauer's former counsel] is here today, so we have a witness here. The prosecution is here. This case has been pending -- I don't know how long it's been pending, but I know that we took a plea on August 28, 2014.
>
> We specifically held a restitution hearing. The motion was filed December 27th, so she had already one attorney that I appointed. So she's already had that benefit, even though she had hired an attorney from Cleveland, who withdrew.
>
> She filed this motion December 27th, a month ago -- almost a month ago, and the issue is narrow. The only documents I've ever seen and which she attached deal with restitution. They don't deal with her motion about ineffective assistance of counsel.
>
> I am going to deny the continuance. It shouldn't be too difficult to find out from Mr. Barstow what he advised her and what he didn't advise her. She's alleging he was ineffective. That should be a pretty narrow inquiry.

> Plus, I do my pleas the same every time. You know that. It's almost verbatim the same. So I know I was thorough with her. I know I went over the plea form carefully with her. And if I didn't, I guess when you'll appeal this motion if I deny it, you'll have a record. But the bottom line is, I am not going to continue it. It's set today. Asking for a continuance today, I am not going to do that.
>
> Beside the fact that I believe from prior statements from Mr. Barstow that she's been uncooperative, wouldn't show up for meetings he scheduled, didn't bring the restitution documents until the day of the hearing, despite him trying to get ahold of her, I see this as a delaying tactic on her part. I'm going to deny the continuance.

(Jan. 20, 2015 Tr. 7-9.)

{¶ 20} The record does not reflect the exact "length of the delay requested," but it appears to have been "brief" in order to obtain and review the transcripts. *Unger* at 67. This factor weighs in favor of granting the continuance.

{¶ 21} Concerning "other continuances have been requested and received," the record reflects 5 prior continuances in the case for a total of 266 days. *Id.* at 67. All continuances were apparently jointly requested, and 4 out of 5 continuances do not reflect whether they were primarily for the benefit of one party over the other. One of the 5 (for 62 days) was to permit the defendant to obtain appointed counsel after her private counsel withdrew. This factor therefore weighs against granting the continuance, but not strongly, because most prior continuances were jointly sought by the parties.

{¶ 22} There is some indication that there would have been "inconvenience to litigants, witnesses, opposing counsel and the court." *Id.* at 67. The continuance was not sought until the day of the hearing at which representatives for the State had appeared, where a witness had appeared, and where the trial court had cleared a time in which to preside over the hearing. This factor weighs in favor of denying the continuance.

{¶ 23} On the topic of "whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived" the trial court said, "I believe from prior statements from [Lauer's former counsel] that she's been uncooperative, wouldn't show up for meetings he scheduled, didn't bring the restitution documents until the day of the

hearing, despite him trying to get ahold of her, I see this as a delaying tactic on her part." (Jan. 20, 2015 Tr. 8-9); *Id.* at 67-68. Not only is the overall standard of review in this case "abuse of discretion," but we typically review fact findings by a trial court (which has the opportunity to personally interact with and adjudge the demeanor of persons appearing before it) with the "utmost" deference. *See, e.g., State v. C.A.*, 10th Dist. No. 14AP-738, 2015-Ohio-3437, ¶ 15. Therefore, despite the fact that Lauer would dispute the trial court's finding, this factor also weighs heavily for denial of her new counsel's motion for continuance.

{¶ 24} The facts in this case show that Lauer "contributed to the circumstance which g[a]ve[] rise to the request for a continuance." *Unger* at 68. The record reflects that she discharged her attorney in November of 2014, did not obtain new counsel until shortly before the January 20, 2015 hearing, and first met with that attorney less than a week before the hearing.

{¶ 25} Under the catch-all considerations of *Unger*, we acknowledge that the State did not formally oppose the continuance, though counsel for the State did speak against it in the sense that he expressed the view that he believed it to be unnecessary. *Id.* at 68 (noting that courts should consider "other relevant factors, depending on the unique facts of each case"). We also recognize that being unprepared probably had a negative impact on defense counsel's ability to represent Lauer in the most optimal way and that a continuance could have cured this problem.

{¶ 26} This analysis yields three factual considerations against granting the continuance, two in favor, and two which may lean slightly against the continuance but which could also be fairly characterized as neutral. Under such circumstances, we do not find that the trial court abused its discretion in failing to grant the continuance.

{¶ 27} Lauer argues that she was deprived of due process and the right to the effective assistance of counsel through the trial court's failure to grant the requested continuance. Even assuming (counter to what we have already decided) that the trial court should have granted Lauer the continuance she sought, Lauer does not explain what

No. 15AP-405

prejudice she suffered.[2]  That is, even though Lauer asserts that a lack of time to prepare prevented her counsel from representing her viewpoint optimally, Lauer does not explain how that may have prevented her from establishing the manifest injustice showing that is required for a post-sentencing motion to withdraw a guilty plea.  *See, e.g.*, Ohio Crim. R. 32.1; *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus; *State v. Reeder*, 12th Dist. No. CA2013-05-075, 2014-Ohio-2233, ¶ 23.  Lauer does not explain what facts or evidence could have changed the result had her counsel had time to learn of them.  Nor can Lauer show that the trial court's denial of a continuance (whether or not an abuse of discretion) resulted in a denial of rights as a matter of law.  *See, e.g.*, *State v. Canty*, 10th Dist. No. 15AP-715, 2015-Ohio-5241, ¶ 8 ("Although an abuse of discretion is typically defined as an unreasonable, arbitrary, or unconscionable decision, no court has the authority, within its discretion, to commit an error of law.").

{¶ 28}  Lauer's single assignment of error is overruled.

## IV.  CONCLUSION

{¶ 29} Because there were relatively balanced considerations for and against granting the continuance and because we find no abuse of discretion in the trial court's decision not to grant the continuance, we therefore affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and HORTON, JJ., concur.

---

[2] Lauer cites *Carey v. Piphus*, 435 U.S. 247, 266 (1978) for the proposition that due process rights are "absolute" and that it is immaterial whether there has been actual prejudice.  While *Carey* holds as such in the context of civil damages, a violation of due process is absolute in the sense that it is nominally compensable even where no actual damages are shown. However, this does not mean that any procedural denial of due process requires reversal without consideration of prejudice as though it were automatically structural error.