[Cite as *BNA Constr. Ltd. v. Ohio Dept. of Job & Family Servs.*, 2017-Ohio-7227.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

BNA Construction, Ltd., :

        Appellant-Appellant, :

                             No. 16AP-317

v. : (C.P.C. No. 15CV-9594)

Director of the State of Ohio Department :       (REGULAR CALENDAR)
of Job and Family Services et al.,

                           :

        Appellees-Appellees. :

                           :

D E C I S I O N

Rendered on August 15, 2017

**On brief:** *Alvaro G. Velez*, for appellant. **Argued:** *Alvaro G. Velez.*

**On brief:** *Michael DeWine*, Attorney General, and *Laurence R. Snyder*, for appellee Ohio Department of Job and Family Services. **Argued:** *Laurence R. Snyder.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Appellant, BNA Construction, Ltd., ("BNA") appeals a decision of the Franklin County Court of Common Pleas issued March 24, 2016 affirming a decision of the Unemployment Compensation Review Commission ("commission"). For the reasons that follow, we affirm.

{¶ 2} On September 30, 2015, the commission affirmed a decision issued by the director of the Office of Unemployment Compensation at the Ohio Department of Job and Family Services ("ODJFS"), specifically the November 20, 2014 "Director's Reconsidered Decision." Following an audit, the director issued her decision concluding that workers performing services for BNA were employees and not independent contractors.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 3}   Acting on a tip that BNA was involved in some sort of alleged fraud, ODJFS conducted an employment audit of BNA.[1]   According to activity logs of the auditor assigned to the case, the matter was opened on December 2, 2013.  Following a series of discussions between the attorney for BNA, the accountant for BNA, and Brandi Vaught, ODJFS' auditor ("the auditor"), on March 20, 2014 the accountant for BNA met with the auditor.

{¶ 4}   At that meeting, the auditor reviewed a number of records and completed a pre-audit questionnaire.  The same day, after a preliminary review of the records, the auditor informed the accountant that because BNA had not provided proof of exclusion from unemployment compensation taxation, she would be reclassifying all workers, who had formerly been classified as 1099 independent contractors, as employees; she issued some preliminary numbers on what the company would likely owe.

{¶ 5}   Six days after the initial audit meeting, the auditor participated in a telephone call that would eventually become the subject of disagreement at later hearings.  It is at least undisputed that on March 26, 2014, a telephone call took place between the auditor and the owner of BNA, Horatio Lucero.  The duration, contents, and identities of other participants in that call are disputed by the parties.

{¶ 6}   Following additional internet research about the persons who performed work for BNA and to ascertain whether they had their own businesses as evidenced by federal tax ID numbers, registration with the secretary of state, or online advertising presence, the auditor issued a letter on September 19, 2014 informing the parties of the audit results.  The auditor concluded that numerous workers should have been classified as employees rather than independent contractors.  The auditor concluded that BNA underreported total wages by approximately 1 million dollars.  The next day, the Office of Unemployment Compensation issued a tax notification containing BNA's computed liability and contribution rate.

{¶ 7}   BNA requested reconsideration of the rate determination. On November 20, 2014, the director of the Office of Unemployment Compensation, acting through a designee, reconsidered the matter with no change in the outcome.  BNA appealed the reconsidered decision on December 15, 2014 to the commission.

---

[1] The full administrative record was filed with the Franklin County Court of Common Pleas on February 18, 2016.

{¶ 8}   Through a hearing officer, the commission held a hearing spread across several dates.  Oral hearings ultimately took place on April 2, May 12, June 11, July 20, and August 19, 2015.  The auditor, Lucero, and three workers for BNA, Fidel Campuzano, Jose Rivera, and Fabiano Santos, testified over the course of the hearings.

{¶ 9}   The auditor testified that she had been an auditor for approximately 5 years, that she had been a "quality audit reviewer" for over 2000 audits, and that she had personally conducted on the order of 400 audits, mostly in the last two years.  (May 12, 2015 Tr. at 23.)  She admitted that she lacked a formal education in accounting, she had been an English major at Eastern Michigan University, and that she had failed to obtain a degree.  However, she claimed to have taken a number of online courses in bookkeeping and accounting and stated she had experience working in a family business.

{¶ 10} The auditor testified that as part of her audit she was required to conduct four tests: a W-2 verification, a payroll validation, a reported wage comparison, and a search for potential misclassified workers and wages.  However, because BNA produced no W-2s, payroll records, or reported wage records, the auditor was unable to complete any tests except the test for potential misclassified workers and wages.  After her preliminary review, she informed BNA's accountant that ODJFS would be reclassifying all workers from 1099 independent contractors to employees and gave BNA's accountant preliminary numbers on unpaid unemployment compensation taxes.

{¶ 11} The auditor further testified that she held a follow-up telephone call on March 26, 2014 with BNA's owner, Lucero.  She testified that she offered interpreting services at the beginning of the call and was told they would not be needed at that time.[2] She testified that BNA's attorney was present during the telephone call and that the attorney helped to re-explain or interpret some of the questions for Lucero.  The auditor testified however, that "most of the questions, [Lucero] was able to answer me directly." (Apr. 19, 2015 Tr. at 102.)  On cross-examination and using telephone records during the hearings, the auditor admitted that this follow-up telephone call with Lucero and his attorney took approximately 23 minutes, although she had marked in her own records that it lasted one hour.  The auditor testified that even though the call was short, she covered with Lucero his employees' standing according to each of the 20 factors set forth

---

[2] "Q: Was there any further discussion about getting an interpreter for the calls with Mr. Lucero?  A: Yes at the beginning of the call on March 26, 2014, I was again offered interpreting services and was told they would not be needed at that time." (Apr. 2, 2015 Tr. at 47.)

in R.C. 4141.01(B)(2)(k), which are used to differentiate between employee and independent contractor status. She testified that because she was not provided proof of independence for the individual workers listed, she did a "general question or the twenty factors on framing services, which [she] was told these individuals provided." (June 11, 2015 Tr. at 46.) The auditor testified that she did not complete the 20-factors test as to each individual employee, but, rather, generally as to all employees based on Lucero's responses. Based on this conversation, the auditor filled out a questionnaire on the 20 factors and her completed questionnaire was introduced as an exhibit at the hearing. The questionnaire reads in relevant part:

> [One] Who directs or controls the manner or method by which instructions are given to the individual(s) performing services?
>
> The employer rcvs a contract through a large company like 84 Lumber. They give him the details and the specs/blueprints. He then tells the workers what needs completed and the time frame for it to be completed.
>
> [Two] What training is required for the individual(s) performing services?
>
> The employer only hires people who have prior experience with framing and construction. He may have to show someone how to operate the heavier, more expensive equipment when it is needed.
>
> [Three] How are the services provided integrated into the regular business functions?
>
> This is a framing company. Without framers/carpenters it would cease to exist.
>
> [Four] By whom does the business require that services be provided?
>
> The worker is not permitted to send in his own substitute. As the employer is the responsible party, he must approve of all workers on the job site in order to keep his contract and in compliance with OSHA.
>
> [Five] Who hires, supervises and/or pays the individual(s) performing services?
>
> The employer hires and pays all of the workers for his job sites. He stated that he oversees the work they do. The client also will do a walk through to make sure it is being completed

correctly. If there are problems, the client will report back to him. The employer is ultimately responsible.

[Six] What type of relationship exists between the business and the individual(s) performing services which contemplates continuing or recurring work, even if not full time?

He will keep using workers as long as they perform well and keep showing up to work. He pays on an hourly or per job basis once a week. Workers were found in multiple weeks, months and years during a review of the records.

[Seven] Who sets the time (hours) during which the individual(s) services are to be performed?

Per the employer. There is not a set start and end time. It is dependent upon the job, location and worker. The worker is told when it needs to be completed, as long as they work within the confines determined by the client and employer, they can set their own hours.

[Eight] How much time does the business require the individual(s) performing services to devote to the business?

Per the employer, as much or as little as they want. Upon review of the records, many individuals were being paid on a full time basis.

[Nine] Where does the business require the individual(s) work to be performed?

The work must be performed at the job site location as specified by the employer.

[Ten] Who sets the order of work that the individual(s) follow while performing services for the business?

The client tells the employer, the employer tells the worker.

[Eleven] What type of reports, oral or written, does the business require the individual(s) performing services to submit?

The workers report to the employer on a daily or every other day basis. They need to report progress on the job site and any problems that they have. They also need to keep him updated concerning completion and deadlines.

[Twelve] How are the individual(s) performing services paid?

They are paid on an hourly or by job basis, weekly.

[Thirteen] Who pays expenses for the individual(s) performing services?

There are no expenses.

[Fourteen] Who furnishes the tools & materials used by the individual(s) performing services?

The workers have their own hand tools. The employer or the client pays for the "expensive" equipment.

[Fifteen] What investment do the individual(s) performing services have in the facilities used to perform the service?

None.

[Sixteen] Is there a profit or loss to the individual(s) performing services as a result of the performance of the services?

No.

[Seventeen] Do the individual(s) performing services also perform similar services for other businesses?

Some of them do if he is slow and doesn't have work for them. But they don't own their own businesses as far as he knows.

[Eighteen] How do the individual(s) performing services make their services available to the general public?

Unknown.

[Nineteen] Does the business have the right to discharge the individual(s) performing services?

Yes – at will for both parties.

[Twenty] Do the individual(s) performing services have the right to end the relationship with the business without incurring liability pursuant to an employment contract or agreement?

Yes – there are no contracts between the employer and the workers.

(ODJFS Ex. 6.)  The auditor admitted that she made no attempt to contact persons who worked for BNA in order to support her conclusion that they were all employees of BNA.

{¶ 12} Lucero testified at the hearing through an interpreter that his attorney was not present during the March 26, 2014 call, that he understood relatively little of what the auditor said on that call, and that the auditor did most of the talking during the call. Lucero also testified that he asked if there was an interpreter available and was informed one was not available. His testimony during the hearing also conflicted to a considerable degree with the responses to the 20 factors recorded by the auditor following the call. He testified he is a middle-man between large contractors and small subcontractors, he has no employees, only subcontractors, and that he may have as many as ten and as few as zero workers performing services at any given time. Lucero stated that the people who do work for him have workers' compensation certificates, all their own tools, including trucks, are paid by the job rather than by the hour, can refuse work, can negotiate on price, bid for projects, set their own hours, and perform work for other companies. Lucero submitted as exhibits a number of workers' compensation certificates held by current subcontractors who do work for BNA. Although the auditor pointed out that the workers' compensation certificates introduced by Lucero were generally not for the period of years encompassed by the audit, Lucero explained that he only keeps current certificates and testified that each of his workers had certificates at all times when they worked for him. He also explained that he has been audited by the IRS and that the IRS concluded he had only subcontractors, no employees.

{¶ 13} Lucero admitted that he had, at one point, counted a number of workers as employees but claimed that they modified their arrangement because subcontractors did not like him making deductions from their pay for taxes. He also admitted he had signed a number of forms in connection with some public projects that suggested the workers were paid by the hour and that they were employees, but stated he did not understand the content of the forms and simply understood that he would not be paid, leaving him unable to pay the workers, unless he signed the forms.

{¶ 14} One of Lucero's frequent workers, Campuzano, also testified. Campuzano explained that he and his brother have their own business working together on roofs. They have workers' compensation certificates and work with a variety of contractors. He testified that when he wants a job, he gets in touch with Lucero. Sometimes Lucero has something and sometimes not. If he has something, Campuzano investigates the job, negotiates on price, and either accepts or declines. If he accepts, he works on his own schedule and sometimes brings another worker with him. He testified he has his own

truck, compressor, nail gun, stapler, and ladder. He knew about roofing before he met Lucero and has received no training from Lucero. He admitted, however, that as of the time of the hearing, other than small jobs for friends, he was working only for Lucero.

{¶ 15} On multiple occasions during the hearings, the auditor testified that BNA's attorney had been present during the March 26, 2014 telephone call. The first such occasion was during the April 2, 2015 hearing. On that first occasion, BNA's attorney objected and asserted that he had not been a party to any such call, but the hearing was continued for scheduling reasons before the parties could further address the issue. When the hearing reconvened on May 12, BNA's attorney explained that he felt compelled to withdraw as he determined he was now a witness in the case. He therefore requested a continuance to permit BNA to obtain new counsel. The hearing officer granted a continuance until July in order to permit BNA time to find new counsel and for new counsel to become familiar with the case. However, on May 14, 2015, shortly after the hearing, the chief hearing officer issued a letter to BNA indicating that "[f]or administrative reasons" the hearing could not be continued until July and would instead reconvene on June 11, 2015, and that no further request for postponement would be granted. (Adm. Rec. at 7.)

{¶ 16} When the hearing reconvened on June 11, BNA's original counsel appeared, indicated that BNA had not been able to find other legal counsel to represent BNA in the time allotted, and he requested more time. The hearing officer denied the request. Upon that denial, BNA's original counsel elected to continue as counsel and stated he felt he had no choice. Shortly thereafter, BNA's counsel again explained that he felt the auditor's claim that he was present on the March 26, 2014 phone call made him a fact witness in the case and, therefore, unable to continue as counsel. He again requested leave to withdraw and sought a continuance. The hearing officer again denied the request and informed BNA of its options if counsel withdrew, including to withdraw from the hearing and have the matter decided in absentia, proceed with the hearing with Lucero as the company representative, or proceed with current counsel. BNA elected to proceed with current counsel.

{¶ 17} Despite these denials of continuances, the hearing was subsequently continued on two additional occasions: once when the auditor received word that her father had died and once when Lucero began to experience chest pain. However, the

same attorney continued to represent BNA when the hearing reconvened following those continuances on July 20, 2015 and for the last time on August 19, 2015.

{¶ 18} On September 30, 2015, the commission issued a decision based on the information presented during the series of hearing dates. The commission "recognize[d] that there [we]re certain factors that [might have] support[ed] independent contractor classification in this case." (Decision at 8.) It explained:

> These factors include th[e] fact that the workers did not require particular training, were not required to work during established hours, were not required to devote themselves full time to the employer's business, may perform similar work for others, furnish some of their own tools and did not incur expenses that were reimbursed by the employer. The fact that materials were furnished for use by the worker is not determinative in this case. Further, the location of the services to be performed is not determinative in this case, especially since it is obvious that construction work will be performed at the property site.

(Decision at 8.) Notwithstanding, the commission found factors i, iii-vi, x, xii, xv-xvi, xix, and xx of R.C. 4141.01(B)(2)(k) were met and supported employee classification. It concluded, "the individuals who performed services for BNA Construction Ltd. during the period from 2010-2013, as identified by the auditor, performed services covered under Ohio Unemployment Compensation Law, and BNA Construction Ltd. is liable for unemployment tax contributions for moneys paid to these individuals." (Decision at 8.)

{¶ 19} On October 27, 2015, BNA appealed that decision to the Franklin County Court of Common Pleas. Both sides briefed the factual and legal issues presented in the record and in the decision of the commission. The common pleas court affirmed the decision of the commission in a decision issued March 24, 2016. The common pleas court concluded that BNA had not shown an abuse of discretion or prejudice from the denial of continuances in which to obtain new counsel because time had been given for BNA to find new counsel, prior counsel had repeatedly chosen to continue to represent BNA, and BNA was able to develop testimony that the attorney was not present during the March 26 phone call, even without the attorney's testimony, because Lucero testified to that fact. It also concluded that the commission's decision was based on reliable, probative, and substantial evidence and that it should be affirmed. It did not address arguments by BNA to the effect that the auditor should have conducted the 20-factors test as to each individual employee. BNA now appeals from that decision.

## II. ASSIGNMENTS OF ERROR

{¶ 20} BNA assigns four errors for our review:

[I.] The Trial Court erred when it concluded that Appellant requested a continuance of the Ohio Department of Job and Family Services (ODJFS) Administrative Hearing only after the hearing began.

[II.] The Trial Court erred by failing to address the question of whether the Hearing Officer instructions - that if Mr. Velez withdrew as legal counsel - Mr. Lucero would have to represent BNA Construction: thus placed Mr. Lucero in a position of practicing law without a license.

[III.] The Trial Court erred when it concluded that the ODJFS' Administrative Hearing Officer determined that the ODJFS auditor properly applied the 20-factor[s] test to ascertain whether Appellant is an employee pursuant to ORC Section 4141.01(B)(2)(k)(i-xx).

[IV.] The Trial Court erred by concluding the Hearing Officer[']s decision was supported by substantial, reliable and probative evidence.

(Emphasis sic.)

## III.  DISCUSSION

{¶ 21} Ohio employers must pay contributions into Ohio's unemployment compensation fund.  R.C. 4141.23(A).  The definition of "employer" includes the type of organization that have "in employment at least one individual."  R.C. 4141.01(A)(1)(a). "Employment" means:

[S]ervice performed by an individual for remuneration under any contract of hire, written or oral, express or implied * * *, unless it is shown to the satisfaction of the director that such individual has been and will continue to be free from direction or control over the performance of such service, both under a contract of service and in fact.

R.C. 4141.01(B)(1).  The burden of proving entitlement to the independent contractor exemption is on the employer.  *Peter D. Hart Research Assocs., Inc. v. Admr. Ohio Bur. of Emp. Servs.*, 10th Dist. No. 95APE06-736 (Dec. 28, 1995), citing *McConnell v. Admr. Ohio Bur. of Emp. Servs.*, 10th Dist. No. 95APE03-262 (Oct. 5, 1995).

{¶ 22} R.C. 4141.01(B)(2)(k) states:

Construction services performed by any individual under a construction contract, as defined in section 4141.39 of the

Revised Code, if the director determines that the employer for whom services are performed has the right to direct or control the performance of the services and that the individuals who perform the services receive remuneration for the services performed. The director shall presume that the employer for whom services are performed has the right to direct or control the performance of the services if ten or more of the following criteria apply:

(i) The employer directs or controls the manner or method by which instructions are given to the individual performing services;

(ii) The employer requires particular training for the individual performing services;

(iii) Services performed by the individual are integrated into the regular functioning of the employer;

(iv) The employer requires that services be provided by a particular individual;

(v) The employer hires, supervises, or pays the wages of the individual performing services;

(vi) A continuing relationship between the employer and the individual performing services exists which contemplates continuing or recurring work, even if not full-time work;

(vii) The employer requires the individual to perform services during established hours;
(viii) The employer requires that the individual performing services be devoted on a full-time basis to the business of the employer;

(ix) The employer requires the individual to perform services on the employer's premises;

(x) The employer requires the individual performing services to follow the order of work established by the employer;

(xi) The employer requires the individual performing services to make oral or written reports of progress;

(xii) The employer makes payment to the individual for services on a regular basis, such as hourly, weekly, or monthly;

(xiii)   The employer pays expenses for the individual performing services;

(xiv)  The employer furnishes the tools and materials for use by the individual to perform services;

(xv)  The individual performing services has not invested in the facilities used to perform services;

(xvi)  The individual performing services does not realize a profit or suffer a loss as a result of the performance of the services;

(xvii)  The individual performing services is not performing services for more than two employers simultaneously;

(xviii)  The individual performing services does not make the services available to the general public;

(xix)  The employer has a right to discharge the individual performing services;

(xx)  The individual performing services has the right to end the individual's relationship with the employer without incurring liability pursuant to an employment contract or agreement.

{¶ 23} BNA relies on R.C. 4141.26(D)(2) for the right to appeal the commission's decision.

{¶ 24} R.C. 4141.26(D)(2) explains that the common pleas court, when reviewing a decision of the commission:

[M]ay affirm the determination or order complained of in the appeal if it finds, upon consideration of the entire record, that the determination or order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the determination or order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

{¶ 25} "Our standard of review is narrower than the trial court's.  As to factual issues, our review is limited to a determination as to whether the trial court abused its discretion." *Miracle Home Health Care, LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-318, 2012-Ohio-5669, ¶ 18 (citing numerous cases).  "An abuse of discretion requires more than an error in judgment.  [In this context], [t]o find an abuse

of discretion, we must conclude that the trial court's decision is without a reasonable basis and clearly wrong." *Id.* "Absent an abuse of discretion on the part of the common pleas court, this court is obligated to affirm its judgment." *Stouffer Hotel Mgt. Corp. v. Ohio Unemp. Comp. Bd. of Review*, 87 Ohio App.3d 179, 183 (10th Dist.1993). However, this court's review of questions of law is plenary. *BRT Transp. LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 14AP-800, 2015-Ohio-2048, ¶ 15.

### A. First Assignment of Error - The common pleas court did not abuse its discretion in determining that BNA requested a continuance after the hearing began.

{¶ 26} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964), citing *Nilva v. United States*, 352 U.S. 385 (1957).

> In evaluating a motion for a continuance, a court should note, *inter alia*: [1] the length of the delay requested; [2] whether other continuances have been requested and received; [3] the inconvenience to litigants, witnesses, opposing counsel and the court; [4] whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; [5] whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and [6] other relevant factors, depending on the unique facts of each case.

(Emphasis sic.) *Unger* at 67-68; *see also State v. Lauer*, 10th Dist. No. 15AP-405, 2016-Ohio-505, ¶ 16.

{¶ 27} BNA asserts that it requested a continuance by letter on June 3, 2015 to the commission and argues that the common pleas court erred in finding that a continuance had been requested only after the hearing had begun. However, since the hearing occurred on April 2, May 12, June 11, July 20, and August 19, 2015, it appears that the request on June 3, 2015 took place after the hearing began. The purpose of the request was to enable BNA to find new counsel because existing counsel believed that testimony by the auditor during the hearing had effectively made him a witness in the case. Under these circumstances, this continuance request would only have been requested after the

hearing had begun, that is, after testimony suggesting to existing counsel that he had become a witness and his client should seek other counsel to avoid a conflict of interest.

{¶ 28} The common pleas court did not abuse its discretion in finding that the request for a continuance was made after the hearing was already underway.

{¶ 29} Accordingly, we overrule the first assignment of error.

**B. Second Assignment of Error - The common pleas court did not abuse its discretion in finding no abuse or prejudice in denying continuance requests to find new counsel.**

{¶ 30} In support of its second assignment of error, BNA argues the common pleas court erred by failing to conclude the commission abused its discretion in not granting continuances to permit BNA to obtain new counsel and in informing Lucero he could proceed as a company representative on behalf of BNA if counsel withdrew.[3]

{¶ 31} During the April 2, 2015 hearing, the auditor testified that BNA's counsel had been present during the March 26, 2014 telephone call. BNA's counsel objected but the hearing was continued before further discussion on the issue occurred. However, at this time, neither counsel nor Lucero indicated that counsel might not be able to continue representing appellant, BNA. Then, when the hearing reconvened on May 12 and the auditor again attempted to testify to the same disputed fact, the parties discussed the issue more fully. BNA's counsel indicated that his telephone records confirmed no such call had taken place and that he felt compelled to withdraw as counsel since he had become a material witness. He requested a continuance to allow BNA to obtain new counsel. On that occasion, the hearing officer granted a continuance and promised to reschedule the hearing for July in order to permit BNA time to find new counsel and for new counsel to become familiar with the case. However, immediately following the

---

[3] BNA argues that the commission subjected Lucero to a charge of practicing law without a license by informing Lucero he could perform as a company representative on behalf of BNA. However, the commission's information is consistent with Ohio Adm.Code 4146-19-01 which expressly provides "[a]t any proceeding before a hearing officer or review commission, any interested party may appear personally, by counsel, or an authorized representative." In *Henize v. Giles*, 22 Ohio St.3d 213 (1986), syllabus, the Supreme Court of Ohio construing Ohio Adm.Code 4146-19-01 held that "[i]nterested parties or their non-lawyer representatives appearing at administrative unemployment compensation hearings before the Ohio Bureau of Employment Services and the Unemployment Compensation Board of Review are not engaged in the unauthorized practice of law." BNA argues that *Henize* does not apply because the case before us involved legal interpretation and application of R.C. 4141.01(B)(2)(k). BNA is correct in that the Supreme Court did caution that *Henize* "does not reach nor permit the rendering of legal advice regarding unemployment compensation laws or board orders." *Id.* at 219. However, because we find no abuse of discretion or prejudice in the denial of continuances, it is not necessary for us to decide whether Lucero, acting as an authorized representative of his company, BNA, would have had to render any legal advice regarding unemployment compensation laws or board orders.

hearing, the commission's chief hearing officer issued a letter to BNA indicating that "[f]or administrative reasons," which were never explained, the hearing could not be continued until July and would instead reconvene on June 11, 2015 and that no further request for postponement would be granted. (Adm. Rec. at 7.)

{¶ 32} When the hearing reconvened on June 11, 2015, BNA's original counsel appeared and requested more time for BNA to find substitute counsel. The hearing officer denied the request stating, "unfortunately, that decision is out of my control at this point, so we cannot continue for that purpose." (June 11, 2015 Tr. at 9.) The hearing officer did not then explain why or how the decision was "out of [her] control." (June 11, 2015 Tr. at 9.) Shortly thereafter, the auditor again attempted to testify that BNA's counsel was present and helping Lucero to understand the telephone conversation on March 26, 2014. BNA's counsel again explained this was not true and that he felt the auditor's testimony made him a necessary fact witness in the case and, therefore, unable to continue as counsel. He again requested leave to withdraw and for a continuance.

{¶ 33} The hearing officer again stated that whether to grant a postponement was not a matter within her control and indicated that she was compelled to deny the request. The hearing officer did not explain this statement, except to indicate that the chief hearing officer of the commission "was actually the first one who gave specific orders not to grant a continuance based on that reason." (June 11, 2015 Tr. at 33.) The hearing officer did not indicate who else gave or may have given "specific orders" not to grant a continuance or otherwise explain why it was compelled to deny BNA's request. (June 11, 2015 Tr. at 33.) Rather, the hearing officer informed BNA of its options if counsel withdrew, including to withdraw from the hearing and have the matter decided in absentia, proceed with the hearing with Lucero as the company representative, or proceed with current counsel. BNA elected to proceed with current counsel.

{¶ 34} The common pleas court in this case concluded that these denials were not an abuse of the commission's discretion and that no prejudice resulted from the denials. We agree.

{¶ 35} After BNA first requested a continuance during the May 12 hearing, the hearing was continued three times, for approximately one month on each occasion. Furthermore, after the issue first came up in the April 2 hearing, but before BNA's counsel determined to withdraw, the hearing was continued for over one month. Yet, BNA still

did not obtain new counsel.  On these facts, the common pleas court did not abuse its discretion.

{¶ 25}  Accordingly, we overrule the second assignment of error.

**C.  Third and Fourth Assignments of Error - The common pleas court did not abuse its discretion in concluding that the commission's decision was supported by substantial, reliable, and probative evidence.**

{¶ 36}  Review of BNA's brief filed before this court reveals that BNA's argument in support of the third and fourth assignments of error is that the commission erred in determining that the auditor performed the 20-factors test properly prior to reclassifying BNA's contractors as employees.[4]  BNA argues that the auditor's testimony was not reliable, probative, or substantive.  BNA also attacks the auditor's credibility.

{¶ 37}  The common pleas court stated that "[a] review of the detailed decision made by the [commission] establishes that the Appellee did consider all twenty (20) factors to determine whether the workers were employees or independent contractors for unemployment purposes."  (Decision at 3.)  The court further found that the transcript supports the findings of the commission and the court is not permitted to substitute its opinion regarding the credibility of the auditor for that of the commission.  Finally, the court found that the commission "found [the auditor] credible and found that over ten (10) of the applicable factors supported Appellee's claim the workers were employees."  (Decision at 3.)

{¶ 38}  We have already set forth the applicable standard of review at the start of our discussion.  Recently, we clarified that standard in *MNH Truck Leasing Co., LLC v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 16AP-301, 2017-Ohio-442, ¶ 10, quoting *Senco Brands, Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 15AP-796, 2016-Ohio-4769, ¶ 11:

> A court of appeals' review of an administrative agency's ruling "is more limited than that of a common pleas court. This court does not weigh the evidence." * * * "Although appellate courts are not permitted to make factual findings or weigh the credibility of the witnesses, the court does have a duty to

---

[4] An argument could be made that BNA waived this argument as it did not argue in its December 14, 2014 appeal to the commission of the director's reconsidered decision. Furthermore, BNA did not articulate this assignment of error as a specific assignment of error in its brief filed with the common pleas court on February 5, 2016, but, rather, merely argued it in support of the articulated assignments of error that the common pleas court erred in not permitting a continuance and in instructing Lucero that he could proceed as a company representative without counsel.

> determine whether the board's decision is supported by the evidence in the record."

{¶ 39} To the extent BNA encourages us to determine whether the auditor's testimony was reliable, probative, or substantive, we decline to do so as our review is restricted to whether the common pleas court abused its discretion. *See Miracle Home.*

{¶ 40} Furthermore, to the extent the commission made any determination as to the credibility of the auditor, we do not question the same.

{¶ 41} Nevertheless, our review of the commission's decision reveals that the commission clearly applied the 20-factors test. Upon appeal of the director's reconsidered decision, pursuant to R.C. 4141.25(D)(2), the commission granted BNA an opportunity for a hearing. The commission conducted a hearing on April 2, May 12, June 11, July 20, and August 19, 2015. BNA presented four witnesses, Horacio Lucero, Fidel Campuzano, Jose Rivera, and Fabiano Santos. The hearing was conducted with a Spanish interpreter. BNA was permitted to and did cross-examine the auditor and the commission's witnesses. The record from that hearing includes evidence which supports the commission's decision. Therefore, the common pleas court did not abuse its discretion in finding the commission's decision was supported by substantial, reliable, and probative evidence. The common pleas court's decision is not without reasonable basis and clearly wrong.

{¶ 42} Accordingly, we overrule BNA's third and fourth assignments of error.

## IV. CONCLUSION

{¶ 43} We conclude the common pleas court did not abuse its discretion in finding no abuse of discretion on the part of the hearing officer in denying BNA's continuance requests and in finding the commission's decision to be supported by reliable, probative, and substantial evidence. We overrule BNA's four assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER, J., concurs.
BRUNNER, J., concurs in part and dissents in part.

BRUNNER, J., concurring in part and dissenting in part.

{¶ 44} I concur with the judgment of the majority in overruling BNA Construction, Ltd.'s ("BNA") first assignment of error, but I would sustain its second, third, and fourth

assignments of error, holding that the trial court abused its discretion in finding the hearing officer's decision was supported by reliable, probative, and substantial evidence. I would remand the appeal to the Franklin County Court of Common Pleas for action consistent with this opinion.

{¶ 45} BNA's appeal is of a decision of the Franklin County Court of Common Pleas entered March 24, 2016, affirming a decision of the Unemployment Compensation Review Commission ("commission"), which affirmed decisions issued by the director of the Office of Unemployment Compensation at the Ohio Department of Job and Family Services ("ODJFS") following an audit concluding that workers performing services for BNA were employees and not independent contractors. The three assignments of error I would sustain are as follows:

> 2. The Trial Court erred by failing to address the question of whether the Hearing Officer instructions - that if Mr. Velez withdrew as legal counsel -Mr. Lucero would have to represent BNA Construction: thus placed Mr. Lucero in a position of practicing law without a license.
>
> 3. The Trial Court erred when it concluded that the ODJFS' Administrative Hearing Officer determined that the ODJFS auditor properly applied the 20-factor test to ascertain whether Appellant is an employee pursuant to ORC Section 4141.01(B)(2)(k)(i-xx).
>
> 4. The Trial Court erred by concluding the Hearing Officers [sic] decision was supported by substantial, reliable and probative evidence.

## DISCUSSION

### A. Second Assignment of Error – Whether the Trial Court Erred in Failing to Address the Argument that Lucero was Forced to Choose Between Presenting a Defense, Continuing with his Current Attorney who Felt he Could not Continue, or the Unauthorized Practice of Law

{¶ 46} During the April 2, 2015 hearing, the auditor testified that BNA's attorney had been present during the March 26, 2014 telephone call. (Commission Record at 147-48.) BNA's attorney objected but the hearing was continued before much further discussion on the issue occurred. *Id.* at 148-53. Then when the hearing reconvened on May 12 and the auditor again attempted to testify to the same disputed fact, the parties discussed the issue more fully. *Id.* at 263-64, 283-95.

{¶ 47} BNA's counsel ultimately concluded it was necessary for him to withdraw as counsel since he had become a material witness, and he requested a continuance to allow BNA to obtain new counsel. *Id.* at 283-95. On that occasion, the hearing officer granted a continuance and promised to reschedule the hearing for July in order to permit BNA time to find new counsel and for new counsel to become familiar with the case. *Id.* at 295-96. However, immediately following the hearing, the commission issued a letter to BNA indicating that "[f]or administrative reasons" (which were never explained) the hearing could not be continued until July and would instead reconvene on June 11, 2015 and that no further request for postponement would be granted. *Id.* at 298. In short, one continuance occurred between the initial objection and the first request for a continuance and, in addition, the initial request for a continuance was granted (albeit not in the length counsel originally sought). BNA was left with less than one month to obtain new counsel who would be ready to proceed with the continued hearing.

{¶ 48} When the hearing reconvened on June 11, BNA's original counsel appeared and requested more time for BNA to find substitute counsel. *Id.* at 322. The hearing officer denied the request stating, "unfortunately, that decision is out of my control at this point, so we cannot continue for that purpose." *Id.* The hearing officer did not then explain why or how the decision was "out of [her] control." *Id.* Shortly thereafter, the auditor again attempted to testify that BNA's counsel was present and helping Horatio Lucero, the principle of BNA, to understand the telephone conversation on March 26, 2014. *Id.* at 339. BNA's counsel again explained that this was not true and that he felt the auditor's testimony made him a necessary fact witness in the case and, therefore, unable to continue as counsel. *Id.* at 339-41. He again requested leave to withdraw and for a continuance. *Id.* at 339-45.

{¶ 49} The hearing officer again stated that whether to grant a postponement was not a matter within her control and indicated that she was compelled to deny the request. *Id.* at 345. Again, the hearing officer did not explain this statement, except to indicate that the chief hearing officer of the commission "was actually the first one who gave specific orders not to grant a continuance based on that reason." *Id.* at 346. The hearing officer did not indicate who else gave or may have given "specific orders" not to grant a continuance or otherwise explain why she was compelled to deny BNA's request. *Id.* Rather, the hearing officer presented BNA with three choices, withdraw from the hearing and have the matter decided in absentia, proceed with the hearing with Lucero as the

company representative, or proceed with current counsel. *Id.* at 345-46. Given this choice, BNA elected to proceed with current counsel. *Id.* at 347.

{¶ 50} The trial court in this case concluded that these denials were not an abuse of the hearing officer's discretion. I disagree. The hearing officer's plain statements during the hearing explain that she felt she lacked discretion, but these statements do not demonstrate why she refused to exercise her discretion at that point. Despite her insistence that she had no discretion to grant further continuances, she could grant further continuances, because she had no difficulty granting one when the ODJFS auditor's father died and when Lucero suffered chest pains. *Id.* at 410-17, 532-34. This unexplained insistence that she lacked the power to grant a continuance as a reason for denial is a paradigmatic example of an "arbitrary" decision to deny a continuance. *See, e.g.*, *Harmon v. Baldwin*, 107 Ohio St.3d 232, 2005-Ohio-6264, ¶ 16.

{¶ 51} However, both we and the trial court are obligated to, "at every stage of the proceeding[s]," disregard harmless errors. Civ.R. 61. With that in mind, I note that after BNA first requested a continuance during the May 12 hearing, the hearing was continued three times, for approximately one month on each occasion. Yet, BNA did not obtain new counsel.[5] (Commission Record at 298, 410-17, 532-34.)

{¶ 52} The language difficulties facing Lucero in the proceeding and on the March 26 telephone conference, along with the challenge of obtaining counsel with whom he could communicate in Spanish, is evident from the record and made the alternatives given to BNA by the hearing officer less than tenable. Given the fact that BNA was able to present the fact that its attorney was not present during the March 26 telephone call through Lucero's testimony, there is some offsetting in the analysis. *Id.* at 464-65. However, the commission hearing officer's actions prevented BNA from providing testimony by BNA's attorney.

{¶ 53} The commission hearing officer denied BNA the opportunity to provide evidence that would have required her to consider and weigh additional evidence differently, not based on cumulative testimony, but on the motivations of the witnesses. To not permit a continuance was an abuse of discretion that affected whether "substantial" evidence existed before the commission. For the trial court not to have addressed this is not consistent with the law and constituted an abuse of discretion. The

---

[5] In addition, after the issue first came up in the April 2 hearing, but before BNA's attorney determined to withdraw, the hearing was continued for over one month. (Commission Record at 148-53.)

fact of further continuances does not render it harmless, as the continuances were granted for emergency reasons with no set date determined at the time they were granted. To find new counsel under those circumstances presented BNA with more uncertainty and greater difficulty because of its lack of definiteness. I, therefore, disagree with the trial court that BNA failed to show prejudice from these errors or that they are harmless. (Mar. 24, 2016 Decision at 2.) I would hold that the trial court erred in failing to consider these matters and sustain BNA's second assignment of error.

**B. Third and Fourth Assignments of Error — Whether the Trial Court Erred in Finding the Commission's Decision was Supported by Reliable, Probative, and Substantial Evidence in that it Found at Least Ten of the R.C. 4141.01(B)(2)(k) Factors Satisfied**

{¶ 54} Ohio Revised Code Section 4141.26 explains that the trial court, when reviewing a decision of the commission:

> [M]ay affirm the determination or order complained of in the appeal if it finds, upon consideration of the entire record, that the determination or order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the determination or order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

R.C. 4141.26(D)(2).

{¶ 55} "Our standard of review is narrower than the trial court's. As to factual issues, our review is limited to a determination as to whether the trial court abused its discretion." *Miracle Home Health Care, LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-318, 2012-Ohio-5669, ¶ 18 (citing numerous cases). "Although an abuse of discretion is typically defined as an unreasonable, arbitrary, or unconscionable decision, no court has the authority, within its discretion, to commit an error of law." *State v. Jones*, 10th Dist. No. 15AP-596, 2016-Ohio-4766, ¶ 15, citing *State v. Moncrief*, 10th Dist. No. 13AP-391, 2013-Ohio-4571, ¶ 7. Thus, the trial court's decision is reviewed for abuse of discretion except as to questions of law, which are reviewed de novo.

{¶ 56} The commission's decision (as articulated by the hearing officer) found factors i, iii-vi, x, xii, xv-xvi, xix, and xx of R.C. 4141.01(B)(2)(k) satisfied. A review of the hearing officer's decision shows that the hearing officer correctly articulated the legal question in each of the factors she found to be satisfied. *Compare* Commission Record at 761-62 *with* R.C. 4141.01(B)(2)(k). Therefore, our analysis should be directed to whether

the evidence satisfied those factors and, to be more specific, whether the trial court "abused its discretion" in determining that the commission decision was supported by "reliable, probative, and substantial evidence." *Miracle Home Health Care, LLC* at ¶ 17-18.

{¶ 57} I recognize that at the commission hearing, BNA presented significant reason to doubt the thoroughness and veracity of ODJFS' auditor's findings on each of the factors. The auditor initially testified to an extended duration of the telephone conversation on March 26, saying it took place for over one hour before admitting, when confronted with telephone records, that it in fact took slightly less than 23 minutes. (Commission Record at 263-66, 353.) The ODJFS auditor testified that BNA's attorney was present and helping to clarify and interpret during the conversation with Lucero, whose first language is not English and who required an interpreter during the hearing. *Id.* at 147-48, 263-64, 339, 362-64. However, Lucero's testimony and BNA's attorney's efforts to testify strongly suggest that at least portions of the ODJFS auditor's testimony was less than accurate. *Id.* at 148, 283-95, 339-45, 464-65.

{¶ 58} Further, Lucero's testimony that he is a middle-man between large contractors and small subcontractors, that he has no employees, only subcontractors, and that he may have as many as ten and as few as zero persons working at any given time, was evidence that should have been considered in analyzing the statutory factors for employee versus independent contractor status of each of the individuals the auditor claimed was a BNA employee. *Id.* at 460-61, 467. Lucero testified that the people who do work for him have workers' compensation certificates and all their own tools (including trucks), are paid by the job rather than by the hour, can refuse work, can negotiate on price, bid for projects, set their own hours, and perform work for other companies. Lucero's testimony to this end was substantial and probative evidence. *Id.* at 470-71, 474, 521-23, 624, 635. His explanation that he has been audited by the IRS and that the IRS concluded that he had only subcontractors, no employees, goes to the reliability of his testimony before the commission. *Id.* at 462. One of Lucero's frequent workers, Fidel Campuzano, confirmed that he and his brother have their own business working together on roofs, carry appropriate workers' compensation certificates, have their own tools and truck, work with a variety of contractors, set their own hours, and, when they do a job for BNA, negotiate on price, and are free to accept or decline. *Id.* at 481-82, 485-88, 490.

This testimony also was substantial, reliable, and probative evidence *against* the ODJFS auditor's findings on which the commission hearing officer relied.

{¶ 59} The auditor testified that she covered each of the 20 factors set forth in R.C. 4141.01(B)(2)(k) with Lucero in order to determine that the workers used by BNA should be presumed to be employees rather than independent contractors. *Id.* at 350, 355-58. She testified that she filled out a questionnaire on the 20 factors and the questionnaire was introduced as an exhibit at the hearing. *Id.* at 643-44, 720-23. However, because the hearing officer failed to permit BNA to have its attorney testify as to whether he was present with his client during this telephone call in which the auditor covered these factors with Lucero, her testimony is unreliable. This is especially so in light of the fact that Lucero is not a native English speaker and required an interpreter during the telephone interview and at the hearing. The auditor testified that BNA's attorney was present during the telephone interview, and BNA disputed that. The commission and the hearing officer denied BNA the right to provide the evidence it needed to assist it in challenging the ODJFS auditor's credibility and the accuracy of the information used to complete the questionnaire that was central to the hearing officer's determination. The auditor's explanation during the hearing of each of the factors she found significant and that she conducted additional research to exclude workers from being counted as employees beyond the information BNA presented in her investigation, does not support the commission's conclusions or obviate the error that occurred at the hearing stage of this matter. *Id.* at 134-38, 375-76, 383-406, 565-67.

{¶ 60} Under these circumstances, I would sustain BNA's third and fourth assignments of error, holding that the trial court abused its discretion in finding that the commission decision was "supported by reliable, probative, and substantial evidence." R.C. 4141.26(D)(2); *Miracle Home Health Care, LLC* at ¶ 17.

_____