OPINION
{¶ 1} Defendant-appellant, Joseph D. Ewing, appeals from the judgment of the Franklin County Court of Common Pleas, whereby the trial court convicted appellant of receiving stolen property pursuant to a jury trial.
 {¶ 2} The Franklin County Grand Jury indicted appellant on one count of forgery, a fifth-degree felony, in violation of R.C.2913.31, one count of receiving stolen property, a fifth-degree felony, in violation of R.C. 2913.51, and one count of possessing criminal tools, a fifth-degree felony, in violation of R.C.2923.24. The charges regarded, in pertinent part, Shantaya Ussury's stolen check number 5031. Appellant pled not guilty to the charges, and a jury trial ensued.
 {¶ 3} At trial, U.S. Bank branch manager Jill Murphy testified to the following on behalf of plaintiff-appellee, the State of Ohio. Murphy manages a U.S. Bank branch located in a grocery store. On December 11, 2004, Murphy handled a banking transaction with appellant, who sought to cash check number 5031. During the transaction, Murphy "looked up [Ussury's] account" and discovered that the check had been reported as stolen. (Tr. at 22.) Murphy informed appellant that he could not cash the check because it was reported as stolen, and appellant appeared surprised and stated: "[S]he wrote me a bad check." (Tr. at 26.) Murphy testified that appellant's reaction "seemed a little dramatic." (Tr. at 27.)
 {¶ 4} Next, Whitehall Police Sergeant Joseph Giammarino testified to the following on appellee's behalf. On December 11, 2004, Giammarino provided security for the grocery store in which the U.S. Bank that Murphy manages is located. That day, Giammarino spoke with appellant in the grocery store parking lot after approaching appellant's vehicle initially to investigate whether appellant's companion, Angie Bollinger, had committed a theft in the grocery store. Appellant exited his vehicle and stated either "`[t]hey wrote me a bad check'" or "`she wrote me a bad check.'" (Tr. at 47.) Giammarino then confirmed with Murphy that appellant tried to cash stolen check number 5031, and Murphy gave Giammarino the check. Giammarino arrested appellant for receiving stolen property.
 {¶ 5} Subsequently, appellant waived his constitutional right to remain silent, and appellant told Giammarino the following. Appellant received check number 5031 as payment for automobile repair work he had done the previous day for a friend of an acquaintance. Appellant thought that Ussury was the person for whom he did the automobile repair work. Appellant received the check at the location where he performed the repair work, and appellant's acquaintance, Jack Raymond, gave him the check. Raymond told appellant that the check was written by the person for whom appellant did the repair work, although that person was not present when appellant received the check. The check was for $100, even though the parties previously agreed that appellant would receive $75 for the repair work. As it turned out, Raymond was to receive the additional $25 from the check. Appellant had Raymond and Bollinger accompany him to the bank "to verify the funds of the check." (Tr. at 62.) After appellant provided the above statements, Giammarino had appellant provide a written statement, upon which appellant essentially reiterated the above-noted information.
 {¶ 6} Whitehall Police Officer Mark Lichtenstein testified to the following on appellee's behalf. On December 11, 2004, when Lichtenstein arrived at the grocery store to assist Giammarino, appellant jumped out of his vehicle and stated: "`She wrote me a bad check.'" (Tr. at 116.) Ultimately, Lichtenstein drove appellant to the police station and, thereafter, Lichtenstein had no further contact with appellant.
 {¶ 7} The parties entered into the following stipulation:
* * * Ussury was contacted by Whitehall police; and she verified that [check number 5031 was] stolen. She did not know [appellant] or Jack Raymond or Angie Bollinger and never gave them permission to possess or cash her [check]. She also verified that check number 5031 was forged, and she never wrote it to [appellant] for $100.
On November 22nd, 2004, Ms. Ussury filed a police report with the Columbus police reporting [check number 5031] stolen.
(Tr. at 19.)
 {¶ 8} After appellee rested its case, appellant testified to the following on his own behalf. On December 10, 2004, appellant performed automobile repair work for Raymond's friend. On December 11, 2004, appellant went to the location where he performed the repair work to obtain payment. At that time, Raymond and Bollinger gave appellant check number 5031 as payment for the repair work. The check "was already written out" for $100, even though the parties previously agreed that appellant was to receive $75 for the repair work. (Tr. at 151.) As it turned out, Raymond was to receive the additional $25 from the check. The person for whom appellant performed the work was not present when he received the check. Appellant asked Raymond and Bollinger to go to the bank with him for "insurance." (Tr. at 155.) Appellant drove Raymond and Bollinger to a U.S. Bank branch in a grocery store. At the bank, Raymond refused to accompany appellant, and only appellant and Bollinger went inside the bank to cash the check. However, the bank teller refused to cash the check because the check was reported stolen.
 {¶ 9} On cross-examination, appellant testified to the following. Raymond had not told appellant the name of the person for whom he did the automobile repair work. Indeed, appellant did not "care what her name was[.]" (Tr. at 177.) Additionally, appellant asked Raymond and Bollinger to go to the bank with him because he "had some suspicion" about the check and was concerned that the check may have been written with insufficient funds. (Tr. at 203.)
 {¶ 10} During cross-examination, appellant confirmed that he received the check at an address in Whitehall, Ohio, which is on the east side of Franklin County. However, appellant acknowledged during cross-examination that the check identified the account owner's address at a different address in Hilliard, Ohio, which is on the west side of Franklin County. Regardless, appellant stated during cross-examination that he did not recognize the discrepancy at the time he received the check.
 {¶ 11} Moreover, during cross-examination, appellant stated that he did not know why Raymond was to receive money from check number 5031. Appellant conceded that the arrangement "sound[ed] fishy[.]" (Tr. at 193.)
 {¶ 12} Lastly, the following exchange took place between appellee and appellant during cross-examination:
Q. Now, Mr. Ewing, in the last ten years have you been convicted of any felony offenses?
A. Yes.
Q. What were they?
A. I had a burglary back in, I think, 2001.
Q. Anything else?
A. I had a robbery, and that's been 1987.
Q. Anything else?
A. I had a[n] RSP before.
Q. A receiving stolen property?
A. Yes.
* * *
Q. You testified just now that the burglary was in 2001. Isn't it true that in October, 2003, you were convicted of burglary?
A. Right, but that case was from 2001.
Q. When — were you arrested in 2001 or 2003?
A. I was put on probation. I was on probation.
Q. In fact, you were arrested October 1st, 2003, and later convicted of burglary, correct?
A. Right. But I would — that case was from 2001, I think.
Q. Talking about the one that you did a year in prison for, not —
A. Right, right. I was on paper for that first. I was on probation first.
* * *
Q. You were also convicted for felony attempted robbery, correct?
A. Yes, that was in 1987.
Q. When were you released for that?
A. 1997.
(Tr. at 166-168.)
 {¶ 13} Before the jury deliberated, the trial court issued jury instructions, including the following instruction on an inference for the receiving stolen property charge:
* * * [P]ossession of property recently stolen, if not satisfactorily explained, is ordinarily a * * * circumstance * * * from which you may reasonably draw the inference and find in light of surrounding circumstances shown by the evidence in this case that the person in possession knew the property had been stolen.
* * *
If you find beyond a reasonable doubt from the evidence in this case that the check was stolen and that, while recently stolen, the property was in the possession of the defendant, you may from those facts draw the inference that the defendant possessed the property with knowledge that the property was stolen. * * *
(Tr. at 278-279.) Appellant objected to the trial court's decision to provide the instruction.
 {¶ 14} Ultimately, the jury found appellant guilty of receiving stolen property, but not guilty of forgery and possession of criminal tools. The trial court then sentenced appellant accordingly.
 {¶ 15} Appellant appeals, raising four assignments of error:
Assignment of Error One
THE TRIAL COURT ERRED BY GIVING JURY INSTRUCTIONS INAPPROPRIATE FOR THE FACTS OF THE CASE, WHICH WERE OBJECTED TO BY DEFENSE COUNSEL, AND DEPRIVED THE APPELLANT TO DUE PROCESS OF LAW AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTION.
Assignment of Error Two
THE ADMISSION OF DEFENDANT'S PRIOR CONVICTIONS AND PRISON SENTENCE DEPRIVED APPELLANT OF HIS RIGHT TO A FAIR TRIAL UNDER THE OHIO AND FEDERAL CONSTITUTIONS.
Assignment of Error Three
TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE WHEN HE FAILED TO OBJECT TO THE ADMISSION OF APPELLANT'S PRIOR RECORD AND TO THE PROSECUTOR'S REFERENCE TO APPELLANT HAVING BEEN TO PRISON, RESULTING IN THE DENIAL OF THE RIGHT TO A FAIR TRIAL AND THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AS WELL AS ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION.
Assignment of Error Four
THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 16} In his first assignment of error, appellant asserts that the evidence precluded the trial court from properly providing the above-noted inference instruction on the receiving stolen property charge. We disagree.
 {¶ 17} Appellant first argues that the above-noted instruction was not proper here because he provided a plausible explanation to establish that he did not know that he received a stolen check. However, we reject such an assertion, noting that "the mere fact that there is some evidence tending to explain a defendant's possession consistent with innocence does not bar instructing the jury" on an inference on receiving stolen property like the one noted above. See Barnes v. United States
(1973), 412 U.S. 837, 845, fn. 9. Rather, "[t]he jury must weigh the explanation to determine whether it is `satisfactory.'" Id.
 {¶ 18} Next, appellant argues that the above-noted instruction was not proper here because the check that appellant received had not been "recently stolen," but that Ussury had reported the check stolen 20 days prior to appellant receiving the check. Again, we reject appellant's contention, noting that:
"Recent" or "recently" as applied * * * to infer guilt from * * * possession of stolen goods is a relative term incapable of specific definition as a matter of law. What is "recent" will vary from case to case. The determination is a factual question for the trier of fact * * *. Among things for the factfinder to consider are the quantity, nature and kind of goods, the ease of marketability of the goods or the demand for the goods, the time lapse between the theft and discovery of the goods, as well as any other relevant circumstances.
State v. Pearsall (May 21, 1985), Greene App. No. 84-CA-33.
 {¶ 19} Thus, here, pursuant to Pearsall, it was within the jury's province to determine whether appellant possessed a "recently" stolen check in regards to the above-noted inference. Indeed, the trial court underscored such a concept when it instructed the jury that:
The term recently * * * has no fixed meaning. Whether property may be considered as recently stolen depends upon the nature of the property and all the facts and circumstances shown by the evidence. The longer the time period since the theft, the more doubtful becomes the inference which may reasonably be drawn * * *.
(Tr. at 279.)
 {¶ 20} Accordingly, we conclude that the evidence did not preclude the trial court from properly providing the above-noted inference instruction on the receiving stolen property charge. As such, we overrule appellant's first assignment of error.
 {¶ 21} In his second assignment of error, appellant argues that the trial court erred by allowing the above-noted evidence concerning appellant's prior convictions and prison sentences. We disagree.
 {¶ 22} Appellant's trial counsel did not object to the above-noted testimony and, thus, we review the issue under the plain error standard. State v. Barnes (2002), 94 Ohio St.3d 21,27. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." We notice plain error "`with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Barnes at 27. "By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." Id. at 27. Under the plain error standard:
* * * First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. * * *
Id.
 {¶ 23} Initially, we need not disturb the trial court's decision to allow appellee to inquire about the sentences on appellant's prior crimes. See State v. Amburgey (1987),33 Ohio St.3d 115, syllabus (holding that the trial court "has broad discretion to limit any questioning of a witness on cross-examination which asks more than the name of the crime, the time and place of conviction and the punishment imposed, when the conviction is admissible solely to impeach general credibility"). Next, in regards to the testimony about appellant's prior convictions and sentences, we note that Evid.R. 609(A)(3) provides, in pertinent part:
For the purpose of attacking the credibility of a witness:
* * *
* * * [E]vidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance.
 {¶ 24} Here, as noted above, appellant acknowledged having prior burglary and receiving stolen property convictions, and appellant clarified that he also had a prior attempted robbery conviction. Such convictions constitute crimes of dishonesty and, thus, evidence concerning such convictions is admissible under Evid.R. 609(A)(3). See State v. Rogers (Nov. 16, 2000), Cuyahoga App. No. 77723 (recognizing that "Ohio courts have consistently held that theft, robbery and aggravated robbery are crimes of dishonesty"); State v. Brown (1993),85 Ohio App.3d 716, 726 ("aggravated burglary, grand theft, and receiving stolen property" constitute crimes of dishonesty); State v. Johnson
(1983), 10 Ohio App.3d 14, 16 (concluding that "acts such as receiving stolen property and stealing are" crimes of dishonesty). In so concluding, we reject appellant's claim that evidence of such prior convictions "increased the risk that the jury would misuse the evidence * * * as evidence of propensity or general character[.]" Rather, the evidence concerning appellant's crimes of dishonesty "was especially relevant and material to the trier of fact" because the trial here involved an issue of credibility, i.e., whether to believe appellee's witnesses or appellant's contrasting testimony. Brown at 727.
 {¶ 25} As an additional matter, we recognize that the dates of appellant's prior convictions and sentences do not trigger Evid.R. 609(B), which states that:
Evidence of a conviction under [Evid.R. 609] is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of community control sanctions, post-release control, or probation, shock probation, parole, or shock parole imposed for that conviction, whichever is the later date, unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. * * *
Thus, based on the above, we conclude that the trial court did not commit error, let alone plain error, by allowing evidence concerning appellant's prior convictions and prison sentences. As such, we overrule appellant's second assignment of error.
 {¶ 26} In his third assignment of error, appellant contends that his trial counsel's performance rose to the level of ineffective assistance. We disagree.
 {¶ 27} The United States Supreme Court established a two-pronged test for ineffective assistance of counsel.Strickland v. Washington (1984), 466 U.S. 668. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. Id. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. Id. A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 28} Here, appellant claims that his trial counsel rendered ineffective assistance by not objecting to the above-noted testimony concerning appellant's prior convictions and prison sentences. However, we find that appellant's trial counsel was not deficient by failing to object to evidence that we have found is admissible. See Strickland at 687. Thus, we conclude that appellant's trial counsel did not render ineffective assistance, and we overrule appellant's third assignment of error.
 {¶ 29} In his fourth assignment of error, appellant first asserts that his receiving stolen property conviction is based on insufficient evidence. We disagree.
 {¶ 30} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. State v. Thompkins (1997),78 Ohio St.3d 380, 386. We examine the evidence in the light most favorable to the state and conclude whether any rational trier of fact could have found that the state proved beyond a reasonable doubt the essential elements of the crime. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307; State v.Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 78. We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact.Jenks at 273. In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but, whether, if believed, the evidence against a defendant would support a conviction. See Jenks at paragraph two of the syllabus; Yarbrough at ¶ 9 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim); State v. Lockhart (Aug. 7, 2001), Franklin App. No. 00AP-1138.
 {¶ 31} R.C. 2913.51(A) defines "receiving stolen property" and states:
No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.
 {¶ 32} R.C. 2901.22(B) defines "knowing" and states:
A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
 {¶ 33} As alleged in the indictment, receiving stolen property is a fifth-degree felony if it involves a check. R.C.2913.51(C) and 2913.71.
 {¶ 34} Here, appellant admitted that he received and attempted to cash check number 5031 from Ussury's checking account, and the parties stipulated that Ussury reported the check as stolen and that Ussury did not give appellant permission to receive or cash the check. Next, we examine circumstantial evidence in this case to determine whether appellant knew or had reasonable cause to know that the check was obtained through commission of a theft offense.
 {¶ 35} Circumstantial evidence is the "proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind." State v. Bentz (1981), 2 Ohio App.3d 352, 355, fn. 6, citing 1 Ohio Jury Instructions (1968), Section 5.10(d). Circumstantial evidence has probative value equal to direct evidence. State v. Nicely (1988), 39 Ohio St.3d 147, 151. Similarly, "individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts." Bourjaily v. United States (1987),483 U.S. 171, 179-180. Here, the circumstances of appellant receiving check number 5031 suggest that appellant knew or should have known that the check was obtained through commission of a theft offense, considering the "cumulation" of the "individual pieces of evidence," pursuant to Bourjaily, and viewing the evidence in a light most favorable to the prosecution, pursuant toJenks. Specifically, appellant obtained check number 5031 from an address in Whitehall, Ohio, a locale on the east side of Franklin County, but the check identified the account owner as living at another address in Hilliard, Ohio, a locale on the west side of Franklin County. In addition, the check was inexplicably written for $100, even though appellant indicated that the parties agreed that appellant would receive $75 for the automobile repair work. Also, in light of these discrepancies, we find it significant to our conclusions that appellant knew that he did not receive the check from the account owner.
 {¶ 36} Therefore, based on the above, we conclude that appellant's receiving stolen property conviction is based on sufficient evidence. Next, in his fourth assignment of error, appellant contends that his conviction is against the manifest weight of the evidence. Again, we disagree.
 {¶ 37} In determining whether a verdict is against the manifest weight of the evidence, we sit as a "thirteenth juror."Thompkins at 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. Additionally, we determine "`whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175. We reverse a conviction on manifest weight grounds for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins at 387, quoting Martin at 175. Moreover, "`it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.'" State v. Brown, Franklin App. No. 02AP-11, 2002-Ohio-5345, at ¶ 10, quoting State v. Long (Feb. 6, 1997), Franklin App. No. 96APA04-511.
 {¶ 38} Here, appellant contends that his receiving stolen property conviction is against the manifest weight of the evidence because he provided a plausible explanation that he received check number 5031 not knowing that it was stolen, but believing that the check was payment for automobile repair work that he performed. However, the jury had cause to discount appellant's testimony given his own admitted "suspicion" about the check and given that appellee properly impeached appellant's credibility with his prior crimes of dishonesty.
 {¶ 39} As such, we conclude that appellant's receiving stolen property conviction is not against the manifest weight of the evidence. Having already concluded that appellant's receiving stolen property conviction is based on sufficient evidence, we overrule appellant's fourth assignment of error.
 {¶ 40} In summary, we overrule appellant's first, second, third, and fourth assignments of error. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT and McGRATH, JJ., concur.