[Cite as *State v. Ross*, 2018-Ohio-3027.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-141 |
| | | (C.P.C. No. 15CR-2957) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Willie D. Ross, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on July 31, 2018

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Kimberly Bond*, for appellee. **Argued:** *Kimberly Bond.*

**On brief:** *Kura, Wilford & Schregardus Co., L.P.A.,* and *Sarah M. Schregardus*, for appellant. **Argued:** *Sarah M. Schregardus.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Willie D. Ross, appeals the January 25, 2017 judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of one count of aggravated burglary and one count of felonious assault. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} This case arises out of an incident that occurred on June 8, 2015 in which Lamont Lake was stabbed while at home. On June 17, 2015, a Franklin County Grand Jury filed an indictment charging Ross with three criminal counts: aggravated burglary in violation of R.C. 2911.11, a felony of the first degree; felonious assault in violation of R.C. 2903.11, a felony of the second degree; and attempted murder in violation of R.C. 2903.02

and 2923.02, a felony of the first degree.  All three charges also included repeat violent offender specifications pursuant to R.C. 2941.149(A).  On July 16, 2015, plaintiff-appellee, State of Ohio, filed a document providing notice of its "intention to use a certified copy of the entry of judgment of conviction for one (1) count of Aggravated Robbery in The 264th District Court of Bell County, Texas on June 21, 2000 as proof of [appellant's] prior conviction for such offense." The same day, the state filed a document entitled "Identification of Discovery Provided," which stated that "[p]ursuant to Evidence Rule 609(B), the State hereby gives advance notice of its intent to seek admission under that rule of any conviction of a witness."

{¶ 3}   On December 13, 2016, the matter proceeded to trial. At trial, Lake testified that he operated several businesses from his home in Columbus including a tattoo business and music business.  Before the incident in question, Lake arranged to give Ross a tattoo in exchange for a camera that Lake wanted for his music business.  Lake completed half of Ross's tattoo on June 5, 2015, and planned to finish the tattoo on June 7.  When Ross returned for the remaining work on his tattoo, Lake complained that the camera Ross traded for the tattoo was not worth as much as he claimed.  Lake ultimately told Ross that he would need to find another artist to finish the tattoo because they were not getting along.

{¶ 4}   On June 8, 2015, Lake stated that he and Ross traded insults via text and Facebook after Ross posted a picture of the tattoo on Facebook and complained about the quality of Lake's work.  According to Lake, Ross stated, "Don't go to this guy and get your tattoos done because this is what he'll do to you." (Tr. Vol. I at 196.)  Lake stated in response he called Ross "the 'b' word and I called him a female because that's the type of stuff my babies' mother would do." (Tr. Vol. I at 196.)

{¶ 5}   Later that day, Lake was working with five other people in his recording studio in his upstairs bedroom.  During the recording session, one of the men heard a knock on the door downstairs.  Lake opened the door when he saw Ross standing outside. According to Lake, Ross walked up to the door and pulled out a knife. Lake attempted to shut the door, but Ross forced his way in and chased Lake upstairs.  As Lake ran upstairs, he yelled and pleaded with Ross to not stab him.  Ross kicked down Lake's bedroom door and the other men in the recording studio ran out of the house.  Ross then stabbed Lake on the left side of his chest. Lake stated that he fell to the floor and was "kicking and trying to

get him off me and trying to fight for my life."  (Tr. Vol. I at 204.)  According to Lake, Ross said, "I'm not a bitch now, am I? I'm not a bitch now, am I?"  (Tr. Vol. I at 204.)  In addition to the stab wound in his chest, Lake also had a cut on his right thigh and several other cuts and scrapes from trying to fight Ross.  Ross then left the house and Lake called 911 to report he had been stabbed by Ross.

{¶ 6}  Ross testified at trial that he traded Lake a camera for a tattoo. Ross acknowledged that he was dissatisfied with the quality of the tattoo and posted a bad review on Facebook.  According to Ross, Lake contacted him in response to his Facebook post and called him a bitch.  Later, Lake texted Ross to say that he would fix the tattoo. Ross went over to Lake's house, knocked on the door, and followed Lake upstairs to a bedroom.

{¶ 7}  Lake told Ross to show his tattoo to the men who were upstairs.  Ross complied.  Lake told Ross that the tattoo looked fine and then punched him. Ross fell backward and Lake started stomping and kicking him.  While he was on the ground, Ross noticed a knife lying on the floor, which he grabbed and used to stab Lake's leg.  The other men in the bedroom surrounded Ross.  Ross stood up and Lake continued trying to hit him. Ross put his head down and swung the knife one more time at Lake, who then fell backward. Ross swung the knife at the other men to make them move out of his way and then ran out of the house.

{¶ 8}  On cross-examination, the state asked Ross about his Facebook profile and pictures of comments allegedly made by him on Facebook.  Ross confirmed that his name as it appeared on his Facebook profile was "Will Science Class Ross" from the time of the creation of his Facebook profile until the date of the incident.  Ross agreed that the state's exhibit accurately reflected his profile on Facebook, including his name and photo.  Ross agreed that his name and photo associated with his Facebook account would appear next to any post or comment he made on Facebook.

{¶ 9}  Ross testified that, at the time of the incident, he was friends on Facebook with a person whose name appeared as "Halley Jordan," but did not know her personally. When presented with a copy of an exchange on Facebook between "Halley Jordan" and another Facebook user with his same name and picture, Ross denied that he made the posts in question or spoke to "Halley Jordan" on the day of the incident.  Ross, however, did admit that the "Halley Jordan" in the conversation did appear to be the same Facebook user with

whom he was friends. When asked how the posts were made with his name and picture attached, Ross claimed that either someone else used his Facebook profile to make the posts in question or that someone made a fake profile with his name and picture.

{¶ 10} At the conclusion of Ross's testimony, the state noted it had located the person identified as "Halley Jordan" on Facebook and asked to present her as a rebuttal witness. Ross's counsel objected to allowing the witness to testify. The trial court allowed voir dire of the witness to determine whether to permit the state to call her as a rebuttal witness. On voir dire, Halley Lyons confirmed that her middle name was Jordan, and that she identified herself on Facebook as "Halley Jordan." Lyons admitted that she had been contacted by Lake about the case. Lyons stated that after she engaged Ross in a conversation on Facebook about the incident, he blocked her from accessing his Facebook page. Lyons stated that she personally saw and took the pictures of the Facebook conversations as presented in the state's exhibits. Following voir dire, the trial court overruled Ross's objection and allowed the state to present Lyons as a rebuttal witness.

{¶ 11} On rebuttal, Lyons testified she was friends on Facebook with both Lake and Ross. Lyons stated that she knew Ross through a mutual friend and that she was only friends on Facebook with one person matching Ross's Facebook profile name. Around the time of the incident, Lyons observed Lake and Ross arguing on Facebook about a tattoo. She posted a comment telling them to calm down. Ross responded "something about sending [Lake] to the [emergency room]." (Tr. Vol III at 48.) Lyons took a picture of Ross's comment and sent it to Lake, who later posted a picture of himself in the hospital.

{¶ 12} Officer Patrick Daugherty of the Columbus Division of Police was the first to arrive at Lake's house on the night of the incident. Upon arriving, Officer Daugherty encountered Lake, who said he had been stabbed by a man in a blue shirt who he "knew as Will Science Class Ross, and that he knew that information because of his Facebook -- that was his name on the Facebook profile page." (Tr. Vol. II at 8.) Officer Daugherty used his personal cell phone to search Facebook and found a page matching the name provided by Lake. After being informed by another officer that there was a "Willie Ross" in the police ID system, Officer Daugherty found that the picture on the Facebook profile matched the profile in the police system.

{¶ 13} Officer Daugherty went to the address listed for the person in the police ID system and when he arrived, he observed a person walking out of the house who matched the picture. Officer Daugherty arrested Ross before entering the house to make sure there were no other victims and to secure the house. While inside, he found a knife on the bathroom sink that appeared to have been washed and saw a blue shirt on the bathroom floor.

{¶ 14} On December 16, 2016, the jury returned a verdict of guilty on the counts of aggravated burglary and felonious assault, and not guilty on the count of attempted murder. The trial court subsequently found that Ross was a repeat violent offender as to the counts of aggravated burglary and felonious assault. On January 25, 2017, the trial court filed a judgment entry. On February 2, 2017, the trial court filed an amended judgment entry reflecting Ross's convictions and imposing the following sentence: seven years on the count of aggravated burglary to be served concurrently with two years on the count of felonious assault.

## II. Assignments of Error

{¶ 15} Ross appeals and assigns the following four assignments of error for our review:

> [1.] The trial court violated Ohio Evid.R. 609 when it found the State could use evidence of the Defendant's prior record to impeach him.
>
> [2.] The trial court erred when it admitted unauthenticated Facebook posts.
>
> [3.] The trial court violated Willie Ross' rights to due process and a fair trial when it allowed Halley Jordan's testimony.
>
> [4.] The trial court erred when it provided additional jury instructions, after the jury began deliberations.

{¶ 16} For ease of discussion, we address Ross's assignments of error out of order.

## III. First Assignment of Error—Prior Conviction

{¶ 17} In his first assignment of error, Ross argues that the trial court erred in allowing testimony regarding Ross's conviction for robbery from 2000. In support of his assertion, Ross first argues that the state failed to give him sufficient notice of its intention to use the conviction as impeachment evidence as required by the rule. As previously noted,

the state specifically provided Ross notice of its intention to use his prior conviction for robbery and provided notice of its intention to use any prior conviction of a witness pursuant to Evid.R. 609.  As a result, we find Ross's argument that the state failed to provide adequate notice to be without merit.

{¶ 18} Next, Ross contends that the trial court erred by failing to "make a specific finding that the probative value of the conviction supported by specific facts and circumstances *substantially* outweighs its prejudicial effect."  (Emphasis sic.)  (Appellant's Brief at 10.)  Evid.R. 609 governs the admission of prior convictions for the purpose of impeaching the accused.  Evid.R. 609(A) provides the general rule:

> For the purpose of attacking the credibility of a witness:
>
> * * *
>
> (2) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
>
> (3) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance.

However, Evid.R. 609(B) provides an exception to this rule:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of community control sanctions, post-release control, or probation, shock probation, parole, or shock parole imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse

party with a fair opportunity to contest the use of such evidence.

Thus, if more than ten years has elapsed since the date of the conviction, the release of the witness from confinement, or the termination of community control sanctions imposed for the same conviction, evidence of the conviction is not admissible unless the following two conditions are met: (1) the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect; and (2) the proponent of the admission gives sufficient advance written notice of intent to use such evidence.

{¶ 19} "A trial court is afforded broad discretion in determining the extent to which such evidence may be admitted under Evid.R. 609." *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, ¶ 27, citing *State v. Wright*, 48 Ohio St.3d 5 (1990), syllabus. *See State v. Walburg*, 10th Dist. No. 10AP-1087, 2011-Ohio-4762, ¶ 59, quoting *State v. Goney*, 87 Ohio App.3d 497, 501 (2d Dist.1993), citing *Wright* (" 'Evid.R. 609 as amended in 1991 makes clear that Ohio trial judges have discretion to exclude prior convictions where the court determines that the probative value of the evidence outweighs the danger of unfair prejudice or confusion of the issues, or of misleading the jury.' "). Therefore, we review the trial court's determination under Evid.R. 609 for an abuse of discretion. An abuse of discretion occurs when a trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 20} Despite the broad discretion generally afforded under Evid.R. 609, we have previously stated that " '[g]enerally, convictions over ten years old rarely should be admitted under Evid.R. 609(B), and only in exceptional circumstances.' " *Keaton v. Abbruzzese Bros.*, 189 Ohio App.3d 737, 2010-Ohio-3969, ¶ 11 (10th Dist.), quoting *Ruff v. Bowden*, 10th Dist. No. 94APE08-1116 (Mar. 28, 1995), citing *Lenard v. Argento*, 699 F.2d 874 (7th Cir.1983). "In exercising its discretion, the trial court must weigh all relevant factors." *Keaton* at ¶ 11, citing *Ruff*.

{¶ 21} In *Goney*, the court examined whether the trial court abused its discretion in admitting the defendant's prior conviction for robbery for impeachment purposes in his trial for rape. The court provided some of the factors for a trial court to consider when exercising its discretion under Evid.R. 609: "(1) the nature of the crime, (2) recency of the prior conviction, (3) similarity between the crime for which there was a prior conviction

and the crime charged, (4) importance of the defendant's testimony, and (5) centrality of the credibility issue." *Goney* at 501, citing Staff Note to July 1, 1992 amendment to Evid.R. 609; and citing McCormick on Evidence (3 Ed.1984) 94, fn. 9. The court noted that the "state bears the burden of showing that the probative value of the evidence outweighs the prejudicial impact of the prior conviction evidence" and that the "trial court should also state for the record the factors which favor admission or exclusion of this evidence." *Goney* at 503. The court found that the crime of robbery was a crime of dishonesty and concluded that the trial court did not err in admitting the prior conviction.[1] In so finding, the court noted that the crime of robbery was "not similar to the rape charge for which the defendant was indicted and does not therefore create the inevitable pressure on the jurors to believe that 'if he did it before he probably did so this time.' " *Id.* Further, the court stated that the defendant's "testimony was important, since the victim's accusation would essentially be unrebutted in the absence of the defendant's testimony" and that "the credibility of the alleged victim and the defendant was a central issue." *Id.*

{¶ 22} Here, the following dialogue took place regarding whether Ross's prior conviction was admissible for purposes of impeachment:

> [Assistant Prosecutor]: The only other thing we need to determine now before they come in and whether you determine that the Aggravated Robbery is an offense of moral turpitude for the prior Aggravated Robbery to come in. * * * Judge, we found a case that's cited under 609. * * * State versus Goney, Goney, it's a '93 case, 87 Ohio App.3d 497. * * * And in that they held that a robbery conviction was a crime reflecting on defendant's honesty.

> The Court: And so that conviction was in 2000, you said?

> [Assistant Prosecutor]: Yes.

> [Ross's Counsel]: [Ross] said that he was convicted in 2000, and his conviction -- or, his release date was in 2005.

> Judge, what we would be arguing is 609(B)(1), arguing that its probative value is supported by specific facts and circumstances substantially outweighs its prejudicial effect.

---

[1] We note that we have previously found that robbery is a crime of dishonesty for purposes of Evid.R. 609. *State v. Smith*, 10th Dist. No. 13AP-523, 2014-Ohio-94, ¶ 24 (finding that a prior conviction for robbery was "evidence * * * probative of appellant's credibility" pursuant to Evid.R. 609); *State v. Ewing*, 10th Dist. No. 06AP-243, 2006-Ohio-5523, ¶ 24.

On * * * State versus Goney, the Court there laid out under Headnote No. 4, the elements that the trial judge should consider when determining an issue like this, that it says, number one, the nature of the crime, the residency of the prior conviction, the similarity between the crime for which there was a prior conviction and a crime charged, the importance of the defendant's testimony, and the centrality of the credibility issue.

At least here what -- what I would argue on behalf of [Ross] is that these crimes are completely different. One was an Aggravated Robbery in the State of Texas; that one's now 11 years old. That there is no similarity between the crime that was charged in Texas and this charge.

It is very important for [Ross] to potentially testify in this case so that he can be able to establish the affirmative defense that he needs to potentially go forward and that credibility is not a[n] essential issue in this case.

* * *

[Assistant Prosecutor]: It's an Aggravated Robbery. It should come in. We had a burglary that was older on the victim that came in. And there was an instruction within the jury instructions that, if this Court chooses to allow it in, that says in this case that the trial court should immediately instruct the jury concerning the limited purpose for which the evidence is being offered, and it is being offered to impeach him.

* * *

The Court: * * * [H]ow do you argue with the probative value outweighs the prejudicial impact?

[Assistant Prosecutor]: Well, Judge, we don't have like a stabbing that we're trying to introduce, so we don't have that problem of if he did it before he probably did it this time. As this case indicates, near the end, that the use of the Robbery conviction, because it reflects on the Ross's honesty. His conviction was 1978, it wasn't recent. It was not similar to the charge that he was on trial for, which is what we have. So therefore, it didn't create that pressure on the jurors to believe that he did it before or probably did it this time.

And, his testimony is important, just like it says here, and the accusation because -- and also it says last, the credibility of the alleged victim and the defendant were a central issue in this case, which is what we are going to have to if he's claiming self defense. They are either going to believe [Ross] or they are

going to believe Mr. Lake. It comes down to a credibility issue in the end, and so I don't think that it would outweigh or that the prejudicial effect would outweigh. * * *

* * *

[Ross's Counsel]: Judge, I think that is the essential issue here, is that when you start to look at these things, they aren't crimes of the same character or nature. * * *

You know, at least from my reading of this case, the conviction was within seven years or his release from confinement was within seven years, so that certainly will fall within Rule 609, but at least here we don't have the same thing. * * * We don't have a crime of the same character. If there were allegations that [Ross] was going over to Mr. Lake's home to rob him or to take items from him, then I certainly would --- we would certainly be in a different position. But here we have an Aggravated Robbery which was dealt with and which he -- which he has served his time for, and I believe that it potentially presents a chilling effect on him being able to potentially testify and put forth a defense.

The Court: I do think that pursuant to State v. Goney, that this could come in because the nature of the crime. Although the prior conviction was not recent, there is no similarity between the crimes for the prior conviction and the crime charged, and it absolutely will come down to a credibility issue. I will note [Ross's] objection.

(Tr. Vol. II at 29-35.)

{¶ 23} Based on the above colloquy, we conclude the trial court did not engage in the appropriate balancing test to conclude that the probative value of the conviction supported by specific facts and circumstances substantially outweigh its prejudicial effect to admit the conviction under Evid.R. 609(B). *Goney* at 501-03. Thus, the trial court abused its discretion in admitting Ross's prior conviction into evidence.

{¶ 24} Despite our conclusion that the trial court abused its discretion in admitting Ross's prior conviction into evidence, we find the error to be harmless error. As this court has noted, "[w]here there is no reasonable possibility the challenged [evidence] contributed to a conviction, the error is harmless and thus does not constitute grounds for reversal." *State v. Fort*, 10th Dist. No. 15AP-704, 2016-Ohio-1242, ¶ 53, citing *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, ¶ 62. Here, there was ample, properly admitted evidence to convict Ross, and we conclude the evidence of his prior conviction did not materially

prejudice Ross. Thus, we find the trial court's erroneous admission of Ross's prior conviction to be harmless error. Accordingly, we overrule Ross's first assignment of error.

## IV. Third Assignment of Error—Rebuttal Testimony

{¶ 25} In his third assignment of error, Ross asserts that the trial court erred by allowing the state to present rebuttal testimony from Lyons. Ross presents three issues related to this assignment of error for our review: (1) whether the trial court erred by failing to exclude Lyons's testimony; (2) whether the trial court erred by failing to grant Ross's request for a continuance to investigate Lyons; and (3) whether the trial court erred by failing to grant Ross's request for a jury instruction regarding witness tampering.

### A. Allowing Lyons's Testimony

{¶ 26} We first address Ross's assertion that the trial court erred by failing to exclude Lyons's testimony. The purpose of rebuttal is to provide the opportunity to refute new evidence offered by the defendant in the presentation of his or her case. *State v. Grinnell*, 112 Ohio App.3d 124, 146-47 (10th Dist.1996), citing *State v. Moore*, 47 Ohio App.2d 181 (9th Dist.1973); *State v. McNeill*, 83 Ohio St.3d 438, 446 (1998). As with other decisions to admit evidence, we review a trial court's decision to admit rebuttal testimony for an abuse of discretion. *Grinnell* at 147; *Steffy v. Blevins*, 10th Dist. No. 02AP-1278, 2003-Ohio-6443, ¶ 23, quoting *State v. Berenyi*, 3d Dist. No. 1-99-87 (Sept. 19, 2000), citing *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967) (" 'Admission of rebuttal testimony is a matter within the sound discretion of the trial court and its judgment will not be reversed absent a clear showing of an abuse of that discretion with attendant material prejudice to the defendant.' "); *McNeill* at 446 ("It is within the trial court's discretion to determine what evidence is admissible as proper rebuttal.").

{¶ 27} The state sought to present Lyons's testimony to rebut Ross's claims that he did not make the Facebook posts in the state's exhibits. Ross does not provide a citation to case law or other authority in support of his argument. Therefore, as Lyons's testimony was introduced to disprove assertions made by Ross in the presentation of his case, we find the trial court did not abuse its discretion by allowing Lyons to provide rebuttal testimony. *See State v. Mendoza*, 10th Dist. No. 16AP-893, 2017-Ohio-8977, ¶ 68; *State v. Solat*, 10th Dist. No. 96APC06-815 (Jan. 30, 1997); *McNeill* at 446-47.

## B. Request for Continuance

{¶ 28} Second, Ross contends that the trial court erred in failing to grant a continuance pursuant to Crim.R. 16 in order for Ross to investigate the rebuttal witness and her proposed testimony. Crim.R. 16(I) provides that "[e]ach party shall provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call in its case-in-chief, or reasonably anticipates calling in rebuttal or surrebuttal." "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1). "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). " 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " *State v. Lauer*, 10th Dist. No. 15AP-405, 2016-Ohio-505, ¶ 16, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

{¶ 29} Here, the state asserts that it was not able to locate Lyons until after the trial had commenced. Upon locating Lyons, the state informed the trial court and Ross. Prior to her testimony before the jury, the state and Ross's counsel questioned Lyons in voir dire. Following voir dire, the trial court stated that "it was possible to find [Lyons] earlier since these issues were argued on Tuesday. However, since [Ross] took the stand just yesterday, I don't -- it's feasible that the rebuttal issue, you know, just came up yesterday since he just testified yesterday afternoon." (Tr. Vol. III at 22-23.) The trial court then granted Ross a brief continuance to investigate and question Lyons.

{¶ 30} Ross does not provide a citation to case law or other authority to support his argument that the trial court abused its discretion by failing to provide a longer continuance. Additionally, we note that Ross fails to explain what facts or evidence he hoped to obtain through the granting of a longer continuance. *See Lauer* at ¶ 27. Under

these facts and circumstances, we find that the trial court did not abuse its discretion by declining to grant Ross a longer continuance to investigate Lyons. *Solat.*

## C. Jury Instructions

{¶ 31} Finally under this assignment of error, Ross contends that the trial court erred by failing to grant his request for a jury instruction regarding witness tampering related to the rebuttal witness. "A trial court is responsible for providing all jury instructions that are relevant and necessary for the jury to weigh the evidence and determine the facts." *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 59, citing *State v. Moody*, 10th Dist. No. 98AP-1371 (Mar. 13, 2001), citing *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. " 'A jury instruction is proper when it adequately informs the jury of the law.' " *Jennings* at ¶ 59, quoting *Moody*, citing *Linden v. Bates Truck Lines, Inc.*, 4 Ohio App.3d 178 (12th Dist.1982). We review a trial court's refusal to give a requested jury instruction for an abuse of discretion. *State v. Kimkhe*, 10th Dist. No. 11AP-433, 2012-Ohio-1964, ¶ 12; *State v. Smith*, 10th Dist. No. 01AP-848 (Apr. 2, 2002), citing *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989).

{¶ 32} Ross argues that Lyons's testimony was suspect because she testified that Lake contacted her during the trial despite the trial court's order separating the witnesses. In support of his argument, Ross cites to *State v. Tilley*, 8th Dist. No. 96756, 2012-Ohio-1533. In *Tilley*, the court found that, prior to the trial court holding a hearing on the prosecution's allegations of witness tampering, the prosecution improperly posed questions suggesting that a witness's testimony was influenced by information she had obtained from the defendant's uncle.

{¶ 33} Here, unlike in *Tilley*, the trial court allowed Lyons to be questioned outside the presence of the jury regarding the issue of potential witness tampering. The trial court found that there was evidence that she was not influenced by her contact with Lake. Furthermore, Lyons was subject to cross-examination, and Ross's counsel asked questions regarding her contact with Lake. Based on the facts and circumstances of this case, we cannot find that the trial court erred by denying Ross's request for a jury instruction regarding witness tampering.

{¶ 34} Accordingly, we overrule Ross's third assignment of error.

## V. Second Assignment of Error—Authentication

{¶ 35} In his second assignment of error, Ross, citing Evid.R. 901, asserts that the trial court erred in admitting into evidence two exhibits offered by the state. The two exhibits at issue are pictures of comments on Facebook allegedly made by Ross. Ross contends that these exhibits were not admissible because they "had none of the traditional markings date and/or time-stamping [of] Facebook messages." (Appellant's Brief at 12.)

{¶ 36} Evid.R. 901(A) provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(B) provides a non-exhaustive list of examples of authentication or identification conforming with the requirements of the rule including: (1) pursuant to Evid.R. 901(B)(1), testimony of a witness with knowledge that a matter is what it is claimed to be; and (2) pursuant to Evid.R. 901(B)(4), distinctive characteristics of the matter including appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with the circumstances.

{¶ 37} Courts have interpreted Evid.R. 901(B)(1) "to allow ' "any competent witness who has knowledge that a matter is what its proponent claims may testify to such pertinent facts, thereby establishing, in whole or in part, the foundation for identification." ' " *State v. Gibson*, 6th Dist. No. L-13-1222, 2015-Ohio-1679, ¶ 49, quoting *Secy. of Veterans Affairs v. Leonhardt*, 3d Dist. No. 3-14-04, 2015-Ohio-931, ¶ 43, quoting *TPI Asset Mgt., LLC v. Conrad-Eiford*, 193 Ohio App.3d 38, 2011-Ohio-1405, ¶ 15 (2d Dist.). We have found that "[t]he threshold for authentication is low" because " ' "[t]he proponent need not offer conclusive evidence as a foundation [but] must merely offer sufficient evidence to allow the question as to authenticity or genuineness to reach the jury." ' " *State v. Ollison*, 10th Dist. No. 16AP-95, 2016-Ohio-8269, ¶ 47, quoting *State v. Callender*, 10th Dist. No. 15AP-15, 2015-Ohio-4255, ¶ 32, quoting *State v. Caldwell*, 9th Dist. No. 14720 (Dec. 4, 1991). *See also State v. White*, 4th Dist. No. 03CA2926, 2004-Ohio-6005, ¶ 61, quoting *Burns v. May*, 133 Ohio App.3d 351, 355 (12th Dist.1999) (" 'The evidence necessary to support a finding that the document is what a party claims it to be has a very low threshold, which is less demanding than the preponderance of the evidence.' "). "Circumstantial evidence, as well

as direct, may be used to show authenticity."  (Quotations and citations omitted.)  *State v. Paster*, 8th Dist. No. 100458, 2014-Ohio-3231, ¶ 32.

{¶ 38}  Absent an abuse of discretion, we will not overturn a trial court's determination on the admissibility of evidence.  *State v. Oteng*, 10th Dist. No. 14AP-466, 2015-Ohio-1231, ¶ 31, citing *State v. Jewett*, 10th Dist. No. 11AP-1028, 2013-Ohio-1246, 52, citing *State v. Martin*, 19 Ohio St.3d 122, 129 (1985); *Ollison* at ¶ 46, citing *State v. Farrah*, 10th Dist. No. 01AP-968 (Apr. 18, 2002).

{¶ 39}  As previously discussed, Lyons testified that she was Facebook friends with both Ross and Lake and was friends on Facebook with only one person matching Ross's profile name.  Ross admitted that he was friends on Facebook with a person known to him as "Halley Jordan," which Lyons confirmed was her name on Facebook.  After witnessing an argument between Ross and Lake about a tattoo on Ross's Facebook page, Lyons posted a message telling them to calm down.  According to Lyons, Ross responded to this message.  Later, Lyons observed a message posted by Ross on Facebook in which he stated that he sent someone to the emergency room.  Lyons took pictures of the Facebook page and sent it to Lake.  Lyons later observed a picture of Lake in the hospital which Lake posted on Facebook.  Lyons testified that the exhibits in question were the pictures she took of the Facebook posts.

{¶ 40}  We find that this testimony is sufficient for purposes of identification or authentication pursuant to Evid.R. 901.  Ross points to no case law or evidence in the record to the contrary.  As a result, we cannot find that the trial court abused its discretion by admitting the two exhibits in question.  *State v. Inkton*, 8th Dist. No. 102706, 2016-Ohio-693, ¶ 72; *Gibson* at ¶ 70.

{¶ 41}  Accordingly, we overrule Ross's second assignment of error.

## VI.  Fourth Assignment of Error—Jury Instructions

{¶ 42}  In his fourth assignment of error, Ross asserts that the trial court erred in providing additional instructions to the jury after it began deliberations.

{¶ 43}  "Where, during the course of its deliberations, a jury requests further instruction, or clarification of instructions previously given, a trial court has discretion to determine its response to that request."  *State v. Carter*, 72 Ohio St.3d 545 (1995), paragraph one of the syllabus.  *See also State v. Preston-Glenn*, 10th Dist. No. 09AP-92,

2009-Ohio-6771, ¶ 28 ("It is within the sound discretion of the trial court to provide supplemental instructions in response to a question from the jury.").  "The trial court's response to a jury's question, when viewed in its entirety, must be a correct statement of law and be consistent with or supplement the instructions previously given to the jury." *State v. Jones*, 10th Dist. No. 15AP-670, 2017-Ohio-1168, ¶ 17, citing *Preston-Glenn* at ¶ 28. We review a trial court's response to a jury's question for an abuse of discretion. *Jones* at ¶ 17.

{¶ 44} The trial court initially provided the following instruction to jurors in the context of the elements of aggravated burglary: "A person trespasses when, without privilege to do so, that person knowingly enters or remains on the premises of another. Privilege means an immunity, license or right conferred by law or bestowed by express or implied grant, or arising out of status, position, office or relationship, or growing out of necessity."  (Tr. Vol III at 153.)  After the jury retired to deliberate, they sent the following question to the court: "Count 1, can you define for us if a person is invited into a home, when does 'remains' * * * come into play for trespassing?"  (Tr. Vol. IV at 4.)  The trial court sent back a question asking the jury to clarify.  The jury offered the following in response: "If [Ross] was invited into the home, is it considered trespass the exact moment he commits a crime? At what point is it considered trespass if a crime is committed?"  (Tr. Vol. IV at 7.)

{¶ 45} After receiving the jury's question and clarification, Ross objected to providing any additional instruction to the jury.  Both parties argued the objection before the court.  The trial court overruled Ross's objection and provided the following additional instruction to the jury: "[T]he privilege of an invited guest may be inferred to have been terminated if he commits a violent act."  (Tr. Vol. IV at 17.)  In providing this instruction, the trial court stated that it relied on *State v. Steffen*, 31 Ohio St.3d 111 (1987), and *State v. Gray*, 2d Dist. No. 26139, 2016-Ohio-1419.

{¶ 46} We have previously stated that "permission to enter a home is deemed terminated by the act of committing an offense of violence against a person authorized to revoke the permission."  (Quotations omitted.)  *State v. Wilcox*, 10th Dist. No. 15AP-957, 2016-Ohio-7865, ¶ 32.  Thus, the trial court's instruction was a correct statement of law. The additional instruction was also supplementary to the prior instructions on the elements of trespass as it related to the charge of aggravated burglary.  Therefore, because the

additional jury instruction was a correct statement of law and supplementary to its prior instructions, we find that the trial court did not abuse its discretion in providing the additional instruction.  *Jones* at ¶ 17.

{¶ 47} Accordingly, we overrule Ross's fourth assignment of error.

## VII.  Conclusion

{¶ 48} Based on the foregoing reasons, the trial court's error in admitting the evidence of Ross's prior conviction was harmless error, and the trial court did not abuse its discretion in allowing the rebuttal testimony, in admitting into evidence posts made on Facebook, or in instructing the jury.  Having overruled Ross's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and DORRIAN, JJ., concur.

DORRIAN, J., concurring.

{¶ 49} I concur with the majority and would overrule the second, third, and fourth assignments of error.

{¶ 50} I also concur with the majority and would overrule the first assignment of error; however, I would not find the trial court's admission of Ross's prior conviction to be error whereas the majority finds it to be harmless error.  I would find the record reflects the trial court properly considered the requirements of Evid.R. 609(B) and stated on the record factors relevant to the exercise of its discretion.  Accordingly, I would find the trial court did not abuse its discretion in admitting Ross's prior conviction.

_____